[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 24, 2006
THOMAS K. KAHN
CLERK

No. 05-10235

_____

D. C. Docket No. 04-00889-CV-JOF-1

MARK POPOWSKI, As Fiduciary of the
United Distributors Inc. Employee
Health Benefit Plan,
THE COMMERCE GROUP, Third Party
Administrator of the United
Distributors Inc. Employee Health
Benefit Plan,

Plaintiffs-Appellants,

versus

DEBORAH PARROTT,

Defendant-Appellee.

_____

No. 05-13344

_____

D. C. Docket No. 05-00044-CV-HLM-4

BLUECROSS BLUESHIELD OF SOUTH CAROLINA,

Plaintiff-Appellant,

versus

JOSUE CARILLO,
VINCENTE CARILLO,

                                            Defendants-Appellees.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

**(August 24, 2006)**

Before BIRCH and WILSON, Circuit Judges, and ROYAL,[*] District Judge.

BIRCH, Circuit Judge:

Appellants Mark Popowski, as fiduciary of the United Distributors, Inc. Employee Health Benefit Plan ("United Distributors Plan"), and the Commerce Group, as its third-party administrator, and BlueCross BlueShield of South Carolina ("BCBS"), as fiduciary of the Mohawk Carpet Corporation Health and Welfare Benefits Plan ("Mohawk Plan"), sued respective appellees, Deborah Parrott, and Josue and Vicente Carillo, under section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3),

---

[*]Honorable C. Ashley Royal, United States District Judge for the Middle District of Georgia, sitting by designation.

seeking reimbursement for medical expenses paid by each plan on behalf of the respective appellees. They now appeal the grant by the district court in each case of a motion to dismiss for lack of subject matter jurisdiction, as well as the denial of other requested relief, based on a determination that none of the claims involved "appropriate equitable relief" as is required to state a claim under that section of ERISA. Id. Based on the Supreme Court's clarification in Sereboff v. Mid-Atlantic Medical Services, Inc., ___ U.S. ___, 126 S. Ct. 1869 (2006), of the scope of "appropriate equitable relief" provided by § 1132(a)(3), we find that the district court erred in dismissing the claims of Popowski and the Commerce Group, but not in dismissing the claims of BCBS. Accordingly, we REVERSE and REMAND for proceedings consistent with this opinion as to the claims brought by Popowski and the Commerce Group, but AFFIRM the district court in its dismissal of the claims brought by BCBS.

## I. BACKGROUND

A. Popowski v. Parrott

Parrott, an employee of United Distributors, Inc., was injured in an accident in May 2003. The United Distributors Plan allegedly paid $ 152,889.65 in medical expenses on her behalf in connection with the accident. PR1-3 at 1. Prior to the

3

United Distributors Plan making any payment, however, Parrott signed a

reimbursement agreement stating that she understood that the plan

> has a claim or lien against, and the first right to receive reimbursement
> from the Participant for, any recovery , settlement, or judgment
> obtained by Participant from or against any party at fault in the
> [accident at issue] or from any other source for the amount paid by the
> Plan as medical claims.

PR1-1, Exh. B at 1.[1]  This agreement echoed the Plan's own subrogation and

reimbursement provision, which stated that

> in any event, the Plan has a lien on any amount recovered by the
> Covered Person whether or not designated as payment for medical
> expenses.  This lien shall remain in effect until the Plan is repaid in
> full.
>   The Covered Person . . . must repay to the Plan the benefits paid on
> his or her behalf out of the recovery made from the third party or
> insurer.

Id., Exhs. A, G at 63.  The Plan further explains that "[t]hese rights provide the

Plan with a priority over any funds paid by a third party to a Covered Person

relative to the Injury or Sickness, including a priority over any claim for non-

medical or dental charges, attorney's fees, or other costs and expenses."  Id.

In October 2003, Parrott obtained a settlement through her attorney for a

total of $525,000.  PR1-6, Exh. at 3.  Of the portion paid by her uninsured motorist

---

[1]For purposes of clarity, because the two cases have been consolidated on appeal, citations to the record in case number 05-10235 will be designated by "PR" followed by the volume and docket numbers and citations to the record in case number 05-13344 will be designated by "BR" followed by the volume and docket numbers.

policy, $175,000 went to her attorney, $125,000 was placed in a structured annuity to her benefit, and the remainder, approximately $200,000, was paid directly to Parrott and deposited into a joint checking account that she held with her husband. Id. Of the $25,000 paid by the tortfeasor's insurer, some went to cover medical expenses, some to cover attorney's fees and costs, and the remaining $2,374.64 went into the Parrotts' account. Id.

After discovering that Parrott had received this settlement, Popowski and the Commerce Group attempted to collect under the policy's reimbursement provision and reinforcing reimbursement agreement. When they were unable to do so, they filed this suit along with a motion for a temporary restraining order and preliminary injunction to protect the settlement proceeds. Popowski and the Commerce Group also filed a motion to have Parrott's husband joined as a party-defendant due to his interest in the bank account in which the recovery funds had been deposited. In response, Parrott filed motions to dismiss, first alleging failure to state a claim, then alleging lack of subject matter jurisdiction. Faced with a split among the circuits regarding the scope of equitable relief under ERISA, the district court, following the lead of the Sixth and Ninth Circuits in interpreting Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204, 122 S. Ct. 708 (2002), concluded that it lacked jurisdiction over appellants' claims because Popowski and

the Commerce Group actually sought legal rather than equitable restitution in that they based their claim on the breach of a contract obligation to reimburse the plan rather than on a property right in a "specifically identifiable fund." PR1-24 at 11-12. The court therefore granted the motion to dismiss, and, accordingly, denied all other requested relief.

B. BCBS v. Carillo

In June 2002, Josue Carillo and Vicente Carillo were involved in an accident. The Mohawk Plan allegedly paid medical benefits of $122,393.64 on behalf of Josue and of $3,971.09 on behalf of Vicente. BR1-1 at 2. The Mohawk Plan contains a subrogation and reimbursement provision which, inter alia, provides:

> If, however, the Covered Person receives a settlement, judgment, or other payment relating to the accidental injury or illness from another person, firm, corporation, organization or business entity paid by, or on behalf of, the person or entity who allegedly caused the injury or illness, the Covered Person agrees to reimburse the Plan in full, and in first priority, for any medical expenses paid by the Plan relating to the injury or illness.

BCBS Letter Br., Exh. B; BR1-1 at 3.[2]

---

[2]The record before the district court does not appear to have contained a copy of the Mohawk Plan. The district court relied upon the recitation in the complaint for the relevant plan language. See BR1-24 at 6.

BCBS has alleged that the Carillos received a settlement of $200,000 in connection with the June 2002 accident and that they have refused to reimburse the Mohawk Plan for the medical expenses it paid on their behalf. BR1-1 at 4. In February 2005, BCBS brought suit pursuant to § 1132(a)(3), seeking enforcement of the subrogation and reimbursement provision through "equitable relief, including but not limited to, restitution, imposition of a constructive trust, and equitable lien." BR1-1 at 5. BCBS also sought a temporary restraining order and preliminary injunction preventing the Carillos from dissipating the settlement funds. The court granted a temporary restraining order but deferred ruling on the preliminary injunction pending further briefing by the parties. Prior to any ruling, the Carillos filed a motion to dismiss asserting that the district court lacked jurisdiction because BCBS's allegations "fail[ed] to state a claim for equitable relief under 29 U.S.C.A. § 1132(a)(3)." BR1-24 at 8.[3] BCBS responded with a motion for summary judgment. The court addressed all three motions in one order.

Also adopting the reasoning of the Sixth and Ninth Circuits, the court concluded that BCBS's claim "regardless of whether it is styled as a claim for a constructive trust, for equitable restitution, or for an equitable lien, simply seeks to enforce a provision of a plan document that would require Defendants to pay

_____

[3]The record on appeal does not include a copy of the Carillos' motion to dismiss.

7

money." Id. at 17-18. It further concluded that "[s]uch a claim is not equitable in nature, and is not 'appropriate equitable relief' for purposes of § 1132(a)(3)." Id. at 18. Alternatively, the court stated that, even under the alternative interpretation of Knudson adopted by a majority of circuits at the time,[4] because BCBS failed to "seek recovery of specified, identifiable funds, but instead [sought] recovery of funds that have been comingled into various checking accounts and spent, in part, to purchase a truck . . . relief under § 1132(a)(3) [was] unavailable." Id. at 18-19. Accordingly, the court granted the motion to dismiss. On the basis of the reasoning underlying the dismissal, the court also denied the motions for preliminary injunction and summary judgment.

C. Appeals

On appeal, Popowski, the Commerce Group, and BCBS now argue that the district courts, in relying upon the reasoning of the Sixth Circuit in Qualchoice v. Rowland, 367 F.3d 638 (6th Cir. 2004) and the Ninth Circuit in Westaff (USA) Inc. v. Arce, 298 F.3d 1164 (9th Cir. 2002), improperly interpreted Knudson.[5]

---

[4]Under this interpretation, a fiduciary's claim could proceed under § 1132(a)(3) as long as it sought to recover funds that (1) were "specifically identifiable," (2) "belong[ed] in good conscience to the Plan," and (3) were "within the possession and control of the defendant beneficiary." Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough, 354 F.3d 348, 356 (5th Cir. 2003).

[5]The reasoning underlying the decisions in both Qualchoice and Westaff was rejected by the Supreme Court. Sereboff, __ U.S. __, 126 S. Ct. at 1873 n.1.

After the district court decisions and the appellate briefing in the cases now before us had occurred, the Supreme Court issued its opinion in Sereboff, addressing the circuit split as to the scope of equitable relief available under ERISA. We now review these cases in light of that decision.

## II. DISCUSSION

A. Subject Matter Jurisdiction

We review both a district court's determination of its subject matter jurisdiction and its grant of a motion to dismiss de novo. Sweat Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1247 (11th Cir. 2005) (jurisdiction); Doe v. Moore, 410 F.3d 1337, 1342 (11th Cir.), cert. denied, __ U.S. __, 126 S. Ct. 624 (2005) (motion to dismiss). A plan fiduciary may bring a civil action under ERISA "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). The Supreme Court has construed § 1132(a)(3) "to authorize only 'those categories of relief that were typically available in equity.'" Sereboff, __ U.S. at___, 126 S. Ct. at 1873 (citing Mertens v. Hewitt Assocs., 508 U.S. 248, 256-57, 113 S. Ct. 2063, 2069 (1993). Whether a remedy is "legal or equitable depends on the basis for [the plaintiff's] claim and the

9

nature of the underlying remedies sought." Knudson, 534 U.S. at 213, 122 S. Ct. at 714 (quotation and citation omitted). "[N]ot all relief falling under the rubric of restitution is available in equity." Id. at 212, 122 S. Ct. at 714. For instance, a claim that, in essence, seeks "nothing other than compensatory damages" – for instance, one that seeks simply "to impose personal liability . . . for a contractual obligation to pay money" is not equitable for the purposes of §1132(a)(3). Sereboff, __ U.S. at __, 126 S. Ct. at 1873, 1874 (first citation omitted) (quoting Knudson, 534 U.S. at 210, 122 S. Ct. at 712-13). Rejecting the approach taken by the Sixth and Ninth Circuits, the Supreme Court further clarified that, as long as a plaintiff is able to establish that "the basis for its claim is equitable," bringing the claim as an action for breach of contract will not disqualify it under § 1132(a)(3). Id. at __, 126 S. Ct. at 1874.

The Court drew a parallel to the early twentieth-century case of Barnes v. Alexander, 232 U.S. 117, 34 S. Ct. 276 (1914), in which one attorney promised two others who assisted him with a case "one-third of the contingent fee." Sereboff, __ U.S. at __, 126 S. Ct. at 1875 (quotation and citation omitted). The Court explained:

> In upholding [the assisting attorneys'] equitable claim to this portion
> of the fee, Justice Holmes recited the familiar rule of equity that a
> contract to convey a specific object even before it is acquired will
> make the contractor a trustee as soon as he gets a title to the thing. On

10

the basis of this rule, he concluded that [the lead attorney's] undertaking created a lien upon the portion of the monetary recovery due [the lead attorney] from the client, which [the assisting attorneys] could follow into the hands of [the lead attorney], as soon as the fund was identified.

Id. (citations, quotations, and previous alterations omitted). The Court then found that the reimbursement provision in the Sereboffs' plan created a similar lien by agreement in that it "specifically identified a particular fund, distinct from [the plan beneficiaries'] general assets . . . and a particular share of that fund to which [the plan] was entitled."[6] Id. Addressing the source of the circuit split, the Court explained that, in Knudson, it had "not reject[ed] [the fiduciary's] suit out of hand because it alleged a breach of contract and sought money, but because [the fiduciary] did not seek to recover a particular fund from the defendant."[7] Id. at 1874. In other words, a claim that "allege[s] breach of contract and [seeks] money" but "[seeks] recovery through a constructive trust or equitable lien on a specifically identified fund" in the defendant's possession and control is equitable relief for purposes of § 1132(a)(3). Id.

_____

[6]Although the Supreme Court only intermittently quoted the plan language at issue in Sereboff, it characterized the provision as requiring "a beneficiary who 'receives benefits' under the plan for such injuries to 'reimburse [the plan]' for those benefits from '[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise).'" Sereboff, ___ U.S. at ___, 126 S. Ct. at 1872 (emphasis added).

[7]The fund at issue in Knudson was not in the hands of the defendant but had been placed in a trust created under California law. Knudson, 534 U.S. at 208, 122 S. Ct. at 711.

11

### 1. United Distributors Plan

The subrogation and reimbursement provision in the United Distributors Plan claims a lien "on any amount recovered by the Covered Person whether or not designated as payment for medical expenses." PR1-1, Exh. G at 63. It further clarifies that "[t]he Covered Person . . . must repay to the Plan the benefits paid on his or her behalf <u>out of</u> the recovery made from the third party or insurer." <u>Id.</u> (emphasis added). Thus, language essentially identical to the Supreme Court's characterization of the plan language in <u>Sereboff</u>, specifies both the fund (recovery from the third party or insurer) out of which reimbursement is due to the plan and the portion due the plan (benefits paid by the plan on behalf of the defendant). Unlike in <u>Knudson</u>, a significant portion of the funds specified went directly into the Parrotts' bank account and, thereby, was in their possession for purposes of this case. Thus, at the time they filed their suit, Popowski and the Commerce Group sought "not to impose personal liability on [Parrott], but to restore to the plaintiff[s] particular funds or property in [Parrott's] possession." <u>See Knudson</u>, 534 U.S. at 214, 122 S. Ct. at 714-15. Accordingly, we conclude that Popowski and the Commerce Group have stated a claim for "appropriate equitable relief" under § 1132(a)(3) and that the district court erred in dismissing the suit for lack of subject matter jurisdiction.

2. Mohawk Plan

The subrogation and reimbursement provision in the Mohawk Plan, unlike that of the United Distributors Plan, claims a right to reimbursement "in full, and in first priority, for any medical expenses paid by the Plan relating to the injury or illness," but does not specify that that reimbursement be made out of any particular fund, as distinct from the beneficiary's general assets. BCBS Letter Br., Exh. B; BR1-1 at 3. Instead, it makes receipt of "a settlement, judgment, or other payment relating to the accidental injury or illness" a trigger for the general reimbursement obligation. Id. Further, in requiring reimbursement "in full", it fails to limit recovery to a specific portion of a particular fund. Accordingly, we conclude that, because the Mohawk plan fails to specify that recovery come from any identifiable fund or to limit that recovery to any portion thereof, it fails to meet the requirements outlined in Sereboff for the assertion of an equitable lien for the purposes of 29 U.S.C. § 1132(a)(3). For this reason, we conclude that it was not error to dismiss BCBS's claims.[8]

---

[8]Our conclusion is similar to that of the district court's alternative holding based upon BCBS's failure to identify a specific fund, except that we do not depend upon the comingling or dissipation of funds. In explaining the distinction, we observe that the Supreme Court in Sereboff also addressed issues of tracing and clarified that the strict tracing requirements that apply to equitable liens "sought as a matter of restitution" do not apply to equitable liens by agreement. Sereboff, __ U.S. at___, 126 S. Ct. at 1875. In other words, "the fund over which [an equitable lien by agreement] is asserted need not be in existence when the contract containing the lien provision is executed." Id. at 1876. Neither, in the case of a lien by agreement is it necessary for a plaintiff to trace property or an asset rightfully belonging to that

13

B. <u>Other Requested Relief</u>

　　1. Popowski and Commerce Group's Motions for TRO, Preliminary
　　Injunction, and the Addition of Parrott as Party Defendant

The district court's denial of Popowski and the Commerce Group's motions for a TRO and preliminary injunction and for the addition of Parrott's husband as a party defendant was based upon the court's perception that it lacked subject matter jurisdiction over the claims in this case. Because we have determined that the court does, in fact, have subject matter jurisdiction, the underlying rationale for the denial no longer exists, and it cannot stand. We will not review the merits when the district court has not yet had the opportunity to do so. <u>See, e.g.</u>, <u>Callahan v. Campbell</u>, 396 F.3d 1287, 1289 (11th Cir. 2005) (per curiam). Accordingly, we vacate the denial of these motions and leave the district court to consider the merits of each on remand.

　　2. BCBS's Motions for Preliminary Injunction and Summary Judgment

Because BCBS failed to state a claim for appropriate equitable relief under § 1132(a)(3), it cannot, as a matter of law, be entitled to judgment in its favor.

---

plaintiff "into its products or substitutes" in the defendant's hands. <u>Id.</u> at 1875. Thus, the fact that the third-party recovery triggering the Mohawk Plan's reimbursement provision was comingled, even absent tracing, would not have disqualified an equitable lien had that equitable lien been <u>by</u> <u>agreement</u> (<u>i.e.</u> had the Mohawk Plan specified that reimbursement come <u>from</u> the third-party recovery funds). Accordingly, although it was alluded to at oral argument, we do not reach any issue of tracing in either of these cases.

Therefore, the district court correctly denied BCBS's motions for preliminary injunction and summary judgment.

### III. CONCLUSION

Popowski and the Commerce Group appeal the dismissal by the district court of their claim under § 1132(a)(3) seeking reimbursement out of the third-party recovery made by Parrott for benefits paid by the United Distributors Plan on her behalf. Because, as required by Sereboff, Popowski and the Commerce Group seek relief from an identifiable fund and have specified the portion of that fund over which they assert a claim, we find that they have stated a claim for appropriate equitable relief under this provision of ERISA. Accordingly, we **REVERSE** the dismissal, **VACATE** the denial of the motions for TRO, preliminary injunction, and the addition of Parrott as party-defendant, and **REMAND** case number 05-10235 for proceedings consistent with this opinion.

BCBS appeals the dismissal by the district court of its claim under § 1132(a)(3) seeking reimbursement for medical expenses paid on behalf of the Carillos by the Mohawk Plan. Because the Mohawk Plan makes the beneficiaries' recovery from a third party only a trigger for reimbursement and sets no limit upon the reimbursement thereby initiated, we find that BCBS has failed to state a claim

15

for appropriate equitable relief according to the requirements outlined in <u>Sereboff</u>.

Accordingly we **AFFIRM** as to case number 05-13344.

Finally, because we affirm the district court's dismissal as to case number 05-13344, we **DENY** BCBS's motion, also currently pending before us, to restore a temporary restraining order against the Carillos' dissipation of funds.

16