# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3531

_____

| | | |
|---|---|---|
| Administrative Committee of the | * | |
| Wal-Mart Stores, Inc. Associates' | * | |
| Health and Welfare Plan, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| James A. Shank, as Trustee of | * | |
| Deborah J. Shank Irrevocable Trust; | * | |
| Deborah J. Shank; Deborah J. Shank | * | |
| Irrevocable Trust, | * | |
| | * | |
| Appellants. | * | |

_____

Submitted: April 13, 2007
Filed: August 31, 2007

_____

Before WOLLMAN, BEAM, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

The Administrative Committee of the Wal-Mart Associates' Health and Welfare Plan ("the Committee") brought suit under section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), against James A. Shank, Deborah J. Shank, and the Deborah J. Shank Irrevocable Trust ("the Shanks"). The Committee sought reimbursement for $469,216

it had paid in medical expenses on behalf of Deborah Shank. The district court[1] granted summary judgment for the Committee, and the Shanks appeal. We affirm.

I.

Deborah Shank ("Shank") was a Wal-Mart employee and a member of the Associates' Health and Welfare Plan ("the Plan"), a self-funded employee benefit plan regulated by ERISA. In May 2000, Shank was severely injured in a car accident, and was eventually adjudicated an incompetent. Pursuant to the terms of the Plan, the Committee paid for the full amount of Shank's medical expenses related to the accident, a total of $469,216. Shank eventually filed a lawsuit against the parties responsible for her injuries, and in 2002, she obtained a settlement of $700,000. After deducting attorney's fees and costs, the district court placed the remaining $417,477 from the settlement into a special needs trust, with Shank as the beneficiary and her husband, James Shank, the trustee.

The Plan contains a subrogation and reimbursement clause that grants the Committee first priority over any judgment or settlement Shank received relating to the accident, so the Committee may recover in full the amount it paid on Shank's behalf. After the Committee learned of Shank's settlement agreement, it sought to enforce the Plan's reimbursement provision, bringing suit under section 502(a)(3) of ERISA against Deborah Shank, James Shank, and the special needs trust. The district court granted summary judgment for the Committee and imposed a constructive trust on the funds in the special needs trust, in an amount not to exceed $469,216. The Shanks appeal the judgment of the district court. Reviewing the district court's decision *de novo*, we affirm.

---

[1]The Honorable Lewis M. Blanton, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

II.

Section 502(a)(3) of ERISA authorizes a civil action by a plan "participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). The parties agree that the Committee is a fiduciary and that it brought suit to enforce the terms of the Plan. The applicable Plan provision obligates Shank to reimburse the Committee from any judgment or settlement that she receives, up to the full amount the Committee paid on her behalf. At issue in this appeal is whether the Committee's claim for full reimbursement sought "appropriate equitable relief" as authorized by section 502(a)(3).

In their brief, the Shanks argued that the Committee sought money damages, a form of legal rather than equitable relief. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993). They contended that this court lacks subject matter jurisdiction because the Committee's claim does not fall under section 502(a)(3). The Shanks appeared to abandon this assertion at oral argument, and we reject it.

In *Sereboff v. Mid Atlantic Medical Servs., Inc.*, 126 S.Ct. 1869 (2006), the Supreme Court concluded that "equitable relief" under section 502(a)(3) includes a claim for restitution, in the form of a constructive trust or equitable lien, where the plaintiff seeks to recover "specifically identifiable" funds, that are due the plaintiff under the terms of the plan, and that are within the defendant's "possession and control." *Id.* at 1874; *see also Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002). In *Sereboff*, the plan administrator, much like the Committee in this case, sought reimbursement of medical expenses from an investment account that contained funds the Sereboffs had obtained in a tort settlement. The Court held that the reimbursement provision of the plan "specifically identified a particular fund,

distinct from the Sereboff's general assets . . . and a particular share of that fund to which Mid Atlantic was entitled." *Sereboff*, 126 S.Ct. at 1875. Therefore, the Court concluded, "Mid Atlantic could rely on a 'familiar rul[e] of equity' to collect for the medical bills it had paid on the Sereboff's behalf." *Id.* (quoting *Barnes v. Alexander*, 232 U.S. 117, 121 (1914)).

The Committee's claim meets *Sereboff*'s requirements for equitable restitution: it seeks (1) the specific funds it is owed under the terms of the plan – i.e., the money it paid to cover Shank's medical expenses; (2) from a specifically identifiable fund that is distinct from the Shank's general assets – i.e., the special needs trust; and (3) that is controlled by defendant James Shank, the trustee. *See Admin. Comm. of Wal-Mart Assocs. Health and Welfare Plan v. Willard*, 393 F.3d 1119, 1122-1125 (10th Cir. 2004); *Admin. Comm. of Wal-Mart Stores, Inc. v. Varco*, 338 F.3d 680, 687-688 (7th Cir. 2003); *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot, & Wansborough*, 354 F.3d 348, 356-358 (5th Cir. 2003). Therefore, we conclude that the Committee's suit seeks equitable relief under section 502(a)(3).[2]

The remaining issue is whether the relief the Committee sought was "appropriate." The Supreme Court in *Sereboff* declined to expound on the meaning of this term, because Sereboff's argument on that point had not been raised in the court below. 126 S. Ct. at 1877 n.2. The Shanks contends that full reimbursement to the Committee is not "appropriate" under section 502(a)(3), and asks us to apply either the "make-whole" doctrine or a *pro rata* share requirement as a rule of federal common law in order to reach this conclusion. According to the make-whole doctrine,

---

[2]In their brief, the Shanks also argued that the Summary Plan Description (SPD), which contains the subrogation and reimbursement clauses at issue in this case, was not part of the 2001 Plan Wrap Document that governed the dispute. The Shanks abandoned this claim at oral argument, and it is foreclosed by our decision in *Admin. Comm. of the Wal-Mart Stores, Inc. v. Gamboa*, 479 F.3d 538 (8th Cir. 2007), which held that the SPD is part of the 2001 Plan Wrap Document. *Id.* at 540, 544-545.

the Committee would not be permitted to enforce its contractual right to reimbursement unless Shank were first made whole, that is, fully compensated for her injuries. *See* 16 Lee R. Russ et. al., *Couch on Insurance* § 223:134 (3d ed. 2000). Under a *pro rata* share model, the Committee would receive only partial reimbursement equal to the share of Shank's settlement that compensates her for medical expenses. *See Sunbeam-Oster Co., Inc. v. Whitehurst*, 102 F.3d 1368, 1373-1374 (5th Cir. 1996).

We are not persuaded that the Committee's full recovery according to the terms of the plan is not "appropriate" relief within the meaning of ERISA. The Supreme Court has recognized that Congress intended for the federal courts "to develop a federal common law of rights and obligations under ERISA-regulated plans." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989) (internal quotation omitted). But the Court nonetheless has proven "reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA," and has declined to create remedies beyond those Congress expressly authorized. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985). In view of this cautious approach, we generally adopt new rules of federal common law only if they are necessary to fill gaps left by the express provisions of ERISA and to effectuate the purposes of the statute. *See, e.g., Varco*, 338 F.3d at 691; *Waller v. Hormel Foods Corp.*, 120 F.3d 138, 141 (8th Cir. 1997); *see also Bollman Hat Co. v. Root*, 112 F.3d 113, 118 (3d Cir. 1997) (federal courts may adopt a common law principle under ERISA "only if necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress") (internal quotation omitted).

In *Waller*, for example, we held that make-whole is not a rule of federal common law that governs our interpretation of the written provisions of ERISA-regulated benefit plans. 120 F.3d at 139-40. We concluded that the terms of the written plan in that case entitled the administrator to full subrogation, regardless of whether the employee had been fully compensated for his injuries. *Waller* recognized

that the make-whole doctrine originated in the law of insurance, where the overriding purpose of an insurance policy is to fully compensate the insured in case of loss, but that many ERISA-regulated benefit plans do not share that purpose. We thus concluded that the make-whole doctrine does not carry over from the insurance context to ERISA. *Waller* did not involve an interpretation of section 502(a)(3)'s reference to "appropriate equitable relief," but nothing in that provision counsels a different result.

The Supreme Court has directed that when courts consider the meaning of "appropriate" equitable relief, they should "keep in mind the special nature and purpose of employee benefit plans." *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) (internal quotation omitted). Among the primary purposes of ERISA is to ensure the integrity of written plans and to protect the expectations of participants and beneficiaries. *See, e.g., United McGill Corp. v. Stinnett*, 154 F.3d 168, 172 (4th Cir. 1998); *Duggan v. Hobbs*, 99 F.3d 307, 309-310 (9th Cir. 1996). Ordinarily, courts are to enforce the plain language of an ERISA plan "in accordance with 'its literal and natural meaning.'" *United McGill*, 154 F.3d at 172 (quoting *Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997)). We therefore do not apply common law theories to alter the express terms of a written plan. *See Varco*, 338 F.3d at 692; *Health Cost Controls*, 139 F.3d at 1072; *Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1452 (4th Cir. 1992); *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 312 (3d Cir. 1982). This is especially true in the context of section 502(a)(3), which "does not, after all, authorize 'appropriate equitable relief' *at large*, but only 'appropriate equitable relief' for the purpose of . . . 'enforc[ing] any provisions' of ERISA or an ERISA plan." *Mertens*, 508 U.S. at 253.

In this case, the Plan is clear about the rule of recovery. It states:

> The Plan has the right to . . . recover or subrogate 100 percent of
> the benefits paid by the Plan on your behalf . . . to the extent of .

. . [a]ny judgment, settlement, or any payment made or to be made, relating to the accident . . . . These rights apply regardless of whether such payments are designated as payment for . . . [m]edical benefits [or] [w]hether the participant has been made whole (i.e., fully compensated for his/her injuries). . . . The Plan has first priority with respect to its right to reduction, reimbursement and subrogation.

(App. 117-118).

To avoid this straightforward plan language, the Shanks argue that the make-whole rule is necessary to achieve what the Supreme Court has called the "principal object" of ERISA: to protect plan participants and beneficiaries. *Boggs v. Boggs*, 520 U.S. 833, 845 (1997). If the Committee is permitted full reimbursement, the Shanks contend, beneficiaries whose tort settlements cover only a small fraction of their injuries will be left without protection, and will be no better off than if they had not joined the Plan.

We acknowledge the difficulty of Shank's personal situation, but we believe the purposes of ERISA are best served by enforcing the Plan as written. Shank would benefit if we denied the Committee its right to full reimbursement, but all other plan members would bear the cost in the form of higher premiums. *See Harris v. Harvard Pilgrim Health Care, Inc.*, 208 F.3d 274, 280-81 (1st Cir. 2000). Reimbursement and subrogation provisions are crucial to the financial viability of self-funded ERISA plans, and, as a fiduciary, the Committee must "preserve assets to satisfy future, as well as present, claims, and must "take impartial account of the interests of all beneficiaries." *Varity Corp.*, 516 U.S. at 514.

Moreover, while ERISA is designed to protect the interests of plan participants and beneficiaries, those interests are specified by the written plan. ERISA's "repeatedly emphasized purpose [is] to protect *contractually defined* benefits." *Russell*, 473 U.S. at 148 (emphasis added). Thus, while some courts have adopted the

make-whole doctrine as a default rule of federal common law in the absence of contractual terms that specify a rule of recovery, these courts recognize that such a common-law rule is inapplicable in the face of clear plan language to the contrary. *See Copeland Oaks v. Haupt*, 209 F.3d 811, 813 (6th Cir. 2000); *Cagle v. Bruner*, 112 F.3d 1510, 1521 (11th Cir. 1997); *Barnes v. Indep. Auto. Dealers Ass'n of Cal. Health & Welfare Benefit Plan*, 64 F.3d 1389, 1395 (9th Cir. 1995).

The written Plan in this case confers benefits on both parties. Shank contributed premium payments, plus a promise to reimburse the Committee for medical expenses in the event she was injured and received a judgment or settlement from third parties. In exchange, she received the certainty that the Committee would pay her medical bills immediately if she was injured. *See Varco*, 338 F.3d at 692; *Cutting v. Jerome Foods, Inc.*, 993 F.3d 1293, 1298 (7th Cir. 1993). Nothing in the statute suggests Congress intended that section 502(a)(3)'s limitation of the Committee's recovery to "appropriate equitable relief" would upset these contractually-defined expectations. Indeed, ERISA's mandate that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), establishes the primacy of the written plan. Therefore, we reject Shank's assertion that the make-whole doctrine limits the Committee's contractual right to recovery.

The Shanks' *pro rata* theory fares no better. Citing *Arkansas Department of Health & Human Services v. Ahlborn*, 126 S. Ct. 1752 (2006), the Shanks argue that the Committee's right of reimbursement is limited to the portion of her settlement that covers her medical expenses. The Shanks claim that Deborah Shank's damages from the accident were over $12 million dollars, and reason that because her settlement of $700,000 amounted to only 5.4% of her total damages, the Committee likewise is entitled to only 5.4% of the money it paid on her behalf, for a total of about $25,000.

*Ahlborn* does not support this result. The Supreme Court there addressed a state law that required Medicaid recipients who obtained a judgment or settlement against a third party to reimburse the State for all payments made on their behalf. The Court concluded that the state reimbursement statute "squarely conflicts with the . . . federal Medicaid laws," which entitled a State to only that portion of a judgment or settlement that covered medical expenses. *Id.* at 1760, 1761-1763. *Ahlborn* thus turned on the application of the federal Medicaid statute. ERISA, by contrast, does not limit the Committee's right to reimbursement. Some employee benefit plans explicitly provide for *pro rata* reimbursement, *see, e.g., Springs Valley Bank & Trust Co. v. Carpenter*, 885 F.Supp. 1131, 1143 (S.D. Ind. 1993), but Shank and the Committee reached a different bargain, agreeing that she would reimburse the Committee in full, and granting the Committee first priority over any settlement or judgment she obtained. The Shanks' *pro rata* theory thus fails for the same reason as does her make-whole theory: federal courts lack authority to fashion a rule of federal common law that conflicts with the written plan and that is unnecessary to achieve the purposes of ERISA. *See Harris*, 208 F.3d at 280-281; *Sunbeam-Oster*, 102 F.3d at 1375-1376. ERISA's purposes of upholding the integrity of written plans and protecting the interest and expectations of all participants and beneficiaries are best served by enforcing the Committee's contractual right to reimbursement. We thus hold that such relief is "appropriate" under section 502(a)(3).

*     *     *

For these reasons, the judgment of the district court is affirmed.

_____