[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 26, 2010
JOHN LEY
CLERK

_____

No. 08-16875

_____

D. C. Docket No. 07-01580-CV-RLV-1

ZURICH AMERICAN INSURANCE COMPANY,
in its capacity as Administrator of the
Zurich Medical Plan,

                                        Plaintiff-Appellee,

versus

KEITH O'HARA,
ROSS & PINES LLC, as trustee of the
Keith O'Hara Full Compensation Fund,

                                        Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 26, 2010)

Before DUBINA, Chief Judge, BIRCH and BLACK, Circuit Judges.

BIRCH, Circuit Judge:

Zurich American Insurance Company ("Zurich"), the sponsor and fiduciary of the Zurich Medical Plan ("the Plan"), filed suit pursuant to section 502(a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3), against Keith O'Hara, seeking reimbursement for medical expenses the Plan had paid on O'Hara's behalf after O'Hara was injured in an automobile collision. The district court granted summary judgment in favor of Zurich. We AFFIRM.

## I. BACKGROUND

On 22 February 2005, O'Hara, a beneficiary and covered person under the Plan, sustained serious bodily injuries when the car he was driving was struck head-on by a large pick-up truck. Following the accident, the Plan paid $262,611.92 in medical expenses on O'Hara's behalf. O'Hara later sued the other driver, and the parties to that action settled for $1,286,457.11.[1]

After learning of O'Hara's third-party recovery, Zurich attempted to collect the $262,611.92 from O'Hara pursuant to the Plan's subrogation and reimbursement provision. It states:

---

[1]It is undisputed that O'Hara was not made whole by receipt of the funds under the settlement agreement.

Immediately upon paying or providing any benefit, the Plan shall be subrogated to and shall succeed to all rights of recovery, under any legal theory of any type for the reasonable value of any services and benefits the Plan provided to covered persons, from any or all of the following "Third Parties" listed below.

In addition to any subrogation rights and in consideration of the coverage provided by this Plan, the Plan shall also have an independent right to be reimbursed by covered persons for the reasonable value of any service and benefits the Plan provides to covered persons, from . . . [t]hird parties, including any person alleged to have caused a covered person to suffer injuries or damages.

. . . .

Covered persons agree as follows:

- That a covered person will cooperate with the Plan in a timely manner in protecting the Plan's legal and equitable rights to subrogation and reimbursement . . . .

- That failure to cooperate in this manner shall be deemed a breach of contract and may result in the termination of health benefits and/or institution of legal action against a covered person.

- That no court costs or attorneys' fees may be deducted from the Plan's recovery without the Plan's express written consent; any so-called 'Fund Doctrine' or 'Common Fund Doctrine' or 'Attorney's Fund Doctrine' shall not defeat this right . . . .

- That regardless of whether a covered person has been fully compensated or made whole, the Plan may collect from covered persons the proceeds of

3

any full or partial recovery that a covered person or his or her legal representative obtain, whether in the form of a settlement . . . or judgment. The proceeds available for collection shall include, but not be limited to, any and all amounts earmarked as noneconomic damage settlement or judgment.

- That benefits paid by the Plan may also be considered to be benefits advanced.

- That covered persons agree that if they receive any payment from any potentially responsible party as a result of an injury or illness, whether by settlement . . . or judgment, the covered person will serve as a constructive trustee over the funds, and failure to hold such funds in trust will be deemed as a breach of the covered person's duties hereunder.

      . . . .

- That the Plan will also have an equitable lien against any rights the covered person may have to recover the reimbursable expenses from any party, including an insurer or another group health program, but limited to the amount of the reimbursable payments made by the Plan . . . . This equitable lien shall also attach to any money or property that is obtained by anybody (including, but not limited to, the covered person or the covered person's attorney, and/or a trust) as a result of an exercise of the covered person's right of recovery (sometimes referred to as "proceeds"). The Plan shall also be entitled to seek any other equitable remedy against any party possessing or controlling such proceeds.

R1-1, Exh. A at 80-82. When O'Hara refused to repay the Plan, Zurich filed suit under ERISA § 502(a)(3), seeking "all appropriate equitable relief" to enforce its right to reimbursement under the Plan. R1-1 at 6. O'Hara's attorneys agreed to place $262,611.92 in an interest-bearing trust account pending the outcome of the lawsuit.

On cross-motions for summary judgment, the parties did not dispute that Zurich's action to recover medical expenses sounded in equity,[2] but quarreled over whether the equitable relief sought in this case was "appropriate" under ERISA § 502(a)(3). The district court granted summary judgment in favor of Zurich, finding that Zurich had a clear and unambiguous contractual right to reimbursement under the Plan. The court further found that the terms of the Plan's subrogation and reimbursement provision expressly disclaimed the "common fund doctrine," thus precluding deduction of attorneys' fees from Zurich's total recovery. R2-61 at 6-8. The court therefore ordered O'Hara to reimburse Zurich

---

[2] In Sereboff v. Mid Atlantic Medical Services, Inc., 547 U.S. 356, 362-64, 368, 126 S. Ct. 1869, 1874-75, 1877 (2006), the Supreme Court held that an action to enforce a plan's reimbursement provision against a beneficiary who is in possession of particular, identifiable funds, sounds in equity and is thus cognizable under § 502(a)(3). See also Popowski v. Parrott, 461 F.3d 1367, 1373 (11th Cir. 2006) (plan fiduciary's action to enforce reimbursement provision was properly brought as an action for equitable relief under § 502(a)(3) because the provision "specifie[d] both the fund (recovery from the third party or insurer) out of which reimbursement is due to the plan, and the portion due the plan (benefits paid by the plan on behalf of the defendant)," and because the funds specified were in the beneficiary's possession).

for the entire $262.611.92 plus any accrued interest. O'Hara now appeals.

## II. DISCUSSION

We review de novo a district court's grant of summary judgment, applying the same legal standards as the district court. See Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1236 (11th Cir. 2003). "Summary judgment is appropriate where 'there is no genuine issue as to any material fact' and 'the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)).

ERISA § 502(a)(3) authorizes a plan fiduciary to bring a civil action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or . . . to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3) (2009). O'Hara argues that enforcement of the reimbursement and subrogation provision is not "appropriate" because he was not made whole by his third-party recovery.

"Under the make-whole doctrine, an insured who has settled with a third-party tortfeasor is liable to the insurer-subrogee only for the excess received over the total amount of his loss." Cagle v. Bruner, 112 F.3d 1510, 1520 (11th Cir. 1997) (per curiam) (quotation marks, citation, and emphasis omitted). We

6

held in Cagle that the make-whole doctrine is a default rule that applies only in the absence of specific and unambiguous language precluding it.  Id. at 1522.  See also Barnes v. Independent Auto. Dealers Ass'n of Cal. Health and Welfare Benefit Plan, 64 F.3d 1389, 1395 (9th Cir. 1995) (applying make-whole rule where subrogation clause contained no language specifically allowing reimbursement even if beneficiary were not made whole); Cutting v. Jerome Foods, Inc., 993 F.2d 1293, 1298-99 (7th Cir. 1993) ("[T]he make-whole rule is just a principle of interpretation [that] can be overridden by clear language in the plan.").  The Plan's reimbursement and subrogation provision, which states that "the Plan may collect from [a] covered person[] the proceeds of any full or partial recovery" he obtains from a third-party tortfeasor, "*regardless* of whether [the] covered person has been fully compensated or made whole," R1-1, Exh. A at 81 (emphasis added), is clearly sufficient to disclaim any "make-whole" limitation on Zurich's right to reimbursement.  Cf. Cagle, 112 F.3d at 1521 (concluding that plan's "standard subrogation language" giving plan the right to be reimbursed "in the event [the beneficiary] recovers the amount of medical expense paid by the [plan] . . . from any third person" was insufficient to show specific rejection of make-whole doctrine).  Because ERISA's primary purpose is to "ensure the integrity of written, bargained-for benefit plans," United McGill Corp. v. Stinnett,

154 F.3d 168, 172 (4th Cir. 1998),[3] the Plan must be enforced as written unless the Plan conflicts with the policies underlying ERISA or application of the common law is "necessary to effectuate the purposes of ERISA," Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health and Welfare Plan v. Varco, 338 F.3d 680, 691-92 (7th Cir. 2003) (quotation marks and citation omitted).

O'Hara contends that, as a matter of equity and in order to effectuate ERISA's policy of protecting plan beneficiaries, the make-whole rule must be applied because allowing Zurich to recoup the medical expenses it paid on his behalf unduly punishes him by requiring him to forfeit a substantial portion of the compensation he received for his other losses, including future wages and bodily integrity, and unjustly enriches Zurich. We disagree.

Applying federal common law to override the Plan's controlling language, which expressly provides for reimbursement regardless of whether O'Hara was made whole by his third-party recovery, would frustrate, rather than effectuate,

_____

[3] See also Longaberger Co. v. Kolt, 586 F.3d 459, 472 (6th Cir. 2009); Duggan v. Hobbs, 99 F.3d 307, 309-10 (9th Cir.1996) (describing ERISA as a "comprehensive statute . . . designed to protect the integrity of [employee benefit] plans and the expectations of their participants and beneficiaries."); Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health and Welfare Plan v. Shank, 500 F.3d 834, 838-39 (8th Cir. 2007) (noting the "primacy of the written plan" under ERISA and rejecting appellant/beneficiary's argument that the make-whole doctrine precluded insurer from exercising its contractual right to recovery); Van Orman v. Am. Ins. Co., 680 F.2d 301, 312 (3d Cir. 1982) ("The Supreme Court has emphasized the primacy of plan provisions absent a conflict with the statutory policies of ERISA.").

ERISA's "repeatedly emphasized purpose to protect contractually defined benefits." Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 148, 105 S. Ct. 3085, 3093 (1985); see also Varco, 338 F.3d at 692. Applying federal common law to deny an employer its right to reimbursement pursuant to a written plan would also frustrate ERISA's purposes by "discourag[ing] employers from offering welfare benefit plans in the first place." Varity Corp. v. Howe, 516 U.S. 489, 497, 116 S. Ct. 1065, 1070 (1996). See also Singer v. Black & Decker Corp., 964 F.2d 1449, 1452 (4th Cir. 1992) ("[R]esort to federal common law generally is inappropriate when its application would . . . discourage employers from implementing plans governed by ERISA.").[4]

_____

[4] O'Hara does not explicitly challenge that aspect of the district court's order finding that the Plan precludes deduction of attorneys' fees from Zurich's total recovery. However, to the extent his argument necessarily encompasses such a challenge, we note that because the Plan clearly and unambiguously disclaimed the "common fund doctrine," the district court correctly found that Zurich was owed the entire amount it paid on O'Hara's behalf without a deduction of attorneys' fees. See, e.g., Health Cost Controls v. Isbell, 139 F.3d 1070, 1072 (6th Cir. 1997) (where ERISA-regulated employee health benefits plan "expressly require[d] full reimbursement of the Plan for medical benefits when a beneficiary recovers sufficient damages from a third party tortfeasor," and beneficiary failed to show that application of common fund doctrine "would advance any explicit statutory purpose of ERISA," beneficiary had no right to a set-off for legal costs attributable to recovery from a third party); see also Shank, 500 F.3d at 839-40 (beneficiary's *pro rata* theory, under which insurer would receive only partial reimbursement equal to that portion of beneficiary's settlement that compensated her for her medical expenses, failed because beneficiary and insurer expressly and unambiguously agreed that beneficiary would reimburse insurer in full); Ryan, 78 F.3d at 127-28 (3d Cir. 1996) (beneficiaries' argument that employee health plan would be unjustly enriched if it was not required to pay a *pro rata* share of their attorney's fees failed where such enrichment was allowed by the express terms of the plan). As we explained with respect to O'Hara's make-whole theory, applying federal common law doctrines to alter ERISA plans is inappropriate where the terms of an ERISA plan are clear and unambiguous. See Bill Gray Enterprises, Inc. Employee Health and Welfare Plan v.

While we sympathize with O'Hara's situation, we cannot conclude that enforcement of Zurich's contractual right to full reimbursement conflicts with ERISA's policy of protecting Plan beneficiaries or that a balancing of the equities in this case requires application of the make-whole doctrine to defeat the Plan's unambiguous reimbursement requirement. Although O'Hara himself will be in a better position if the subrogation provision is not enforced, plan fiduciaries must "take impartial account of the interests of *all* beneficiaries." Varity Corp., 516 U.S. at 514, 116 S. Ct. at 1078 (emphasis added). Reimbursement inures to the benefit of all participants and beneficiaries by reducing the total cost of the Plan. If O'Hara were relieved of his obligation to reimburse Zurich for the medical benefits it paid on his behalf, the cost of those benefits would be defrayed by other plan members and beneficiaries in the form of higher premium payments. Plan fiduciaries must also ensure that the assets of employee health plans are preserved in order to satisfy present and future claims. See id. Because maintaining the financial viability of self-funded ERISA plans is often unfeasible in the absence of reimbursement and subrogation provisions like the one at issue in this case, see Shank, 500 F.3d at 838, denying Zurich its right to reimbursement would harm

Gourley, 248 F.3d 206, 220-21 n.13. (3d Cir. 2001); Isbell,139 F.3d at 1072.

other plan members and beneficiaries by reducing the funds available to pay those claims. Moreover, O'Hara availed himself of the benefits of the Plan with the knowledge that the Plan would be entitled to full reimbursement for those benefits in the event he was injured and received full or partial recovery from a third party tortfeasor. As the Third Circuit has pointed out, any inequity in this case would lie in permitting O'Hara "to partake of the benefits of the Plan and then after [he] had received a substantial settlement, invoke common law principles to establish a legal justification for [his] refusal to satisfy [his] end of the bargain." Ryan v. Fed. Express Corp., 78 F.3d 123, 127-28 (3d Cir. 1996); see also Shank, 500 F.3d at 839 (enforcement of ERISA plan, which expressly precluded make-whole rule, was "appropriate" where plan "confer[red] benefits on both parties," by requiring payment of premiums plus a promise to reimburse the plan in exchange for the "certainty that the [plan] would pay [beneficiary's] medical bills immediately if [beneficiary] was injured").

Finally, we find no merit in O'Hara's argument that Zurich's claim for reimbursement violates ERISA's anti-discrimination provision in that it forces him to make a greater contribution to the Plan than similarly situated participants and results in his receiving lesser benefits under the Plan than similarly situated participants. ERISA § 702(b)(1) prohibits a group health plan from "requir[ing]

11

any individual . . . to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor." 29 U.S.C. § 1182(b)(1). The reimbursement Zurich seeks in this case is not a premium or contribution on the basis of any health status-related factor to be paid out of O'Hara's general assets. Rather, Zurich seeks to recover specific and identifiable funds, advanced to cover O'Hara's accident-related medical expenses, that are being held in trust by O'Hara's attorneys.

To the extent the reimbursement and subrogation provision is more accurately characterized as a "limitation" or "restriction" on the level of benefits conferred by the Plan under ERISA § 702(a)(2)(B),[5] it is not impermissibly discriminatory because it applies uniformly to *all* participants and requires reimbursement from *any* participant or beneficiary who receives medical benefits under the Plan and then subsequently recovers from a third party. See 29 C.F.R. § 2590.702(b)(2)(i)(B) (2010) (stating that "benefits provided under a plan . . . must be uniformly available to all similarly situated individuals"). The

---

[5] ERISA § 702(a)(2)(B) provides that nothing in the statute "prevent[s] . . . a plan or coverage from establishing limitations or restrictions on the amount, level, extent, or nature of the benefits or coverage for similarly situated individuals enrolled in the plan or coverage." 29 U.S.C. § 1182(a)(2)(B).

12

fact that O'Hara is affected by the Plan's right to subrogation, while others who have not received tort recoveries from third-parties are not, does not render the Plan discriminatory.

## III. CONCLUSION

O'Hara appeals the district court's order granting summary judgment in favor of Zurich and ordering O'Hara to reimburse Zurich for the medical expenses the Plan paid on O'Hara's behalf. Because full reimbursement according to the terms of the Plan's clear and unambiguous subrogation provision is necessary not only to effectuate ERISA's policy of preserving the integrity of written plans but to protect the interests and expectations of all plan participants and beneficiaries, such relief is both "appropriate" and "equitable" under ERISA § 502(a)(3). Accordingly, the judgment of the district court is **AFFIRMED.**