[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-14212
Non-Argument Calendar

_____

D.C. Docket No. 8:19-cv-00545-JDW-AEP

PUBLIX SUPER MARKETS, INC.,
In its Capacity as Plan Sponsor and Plan Administrator
of The Publix Super Markets, Inc., Group Health Benefit Plan,

Plaintiff-Counter-Defendant
Appellee,

versus

PATRICIA FIGAREAU,
individually and on behalf of L.P., a minor,
FRANTZ PAUL,
individually and on behalf of L.P., a minor,
MARIA D. TEJEDOR,
Esquire,

Defendants-Appellants,

DIEZ-ARGUELLES & TEJEDOR, P.A.,

Defendant-Counter Claimant
Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 24, 2021)

Before WILLIAM PRYOR, Chief Judge, NEWSOM and ANDERSON, Circuit Judges.

PER CURIAM:

Patricia Figareau, her husband, Frantz Paul, and their legal counsel, Diez-Arguelles & Tejedor, P.A., appeal the summary judgment in favor of Paul's employer, Publix Super Markets, Inc. Publix filed a complaint for reimbursement for medical expenses its group health benefit plan paid for Figareau and Paul's daughter from the proceeds the family received in a settlement of a medical malpractice action. The district court ruled that Publix was entitled to an equitable lien by agreement on the settlement proceeds in the full amount paid by the Plan. *See* 29 U.S.C. § 1132(a)(3). Figareau, Paul, and their counsel challenge the subject-matter jurisdiction of the district court, the entry of summary judgment for Publix, and the denial of their motion for summary judgment. We affirm.

Publix self-funded the Plan, which provided medical expense benefits to eligible employees and their dependents. By its terms, the Plan "may issue payments for covered medical, prescription and other health care claims incurred by a member for a covered injury or illness caused by 'another party' . . . , but the

2

member agrees to fully reimburse the Plan if and when the member receives payment from another party in connection with such injury or illness." As a condition of payment, the Plan receives a "First Priority Right of Subrogation and/or Reimbursement." The Plan is "entitled to first and full priority reimbursement out of any recovery to the extent of the Plan's payments" and to "a first priority equitable lien against any recovery to the extent of benefits paid," which "supersedes any right that the member may have to be made whole." Recovery consists of "[a]ny and all monies identified, paid or payable to the member through or from another party by way of judgment, award, settlement, . . . or otherwise . . . to compensate for any losses caused by, or in connection with, such member's injury or illness."

Paul, a Plan member, enrolled his and Figareau's daughter, L.P., in the Plan. During L.P.'s delivery, she suffered a brachial plexus injury, after which the Plan paid $88,846.39 of her medical expenses for surgery and therapy. Paul and Figareau filed a medical malpractice action against L.P.'s medical team and the hospital, but they dismissed the action. The couple recovered settlement proceeds of $95,000 from the hospital, and three years later, they executed a structured settlement agreement with the medical team for $750,000. A Florida court approved both settlements "finding that the allocation as among the parents and the minor" and the payment of attorney's fees and costs "to be fair, reasonable, and in

[L.P.'s] best interest." The couple and L.P. deposited the proceeds in a settlement account held in trust by their attorney.

Publix filed its complaint for an equitable lien and later moved for summary judgment. Paul, Figareau, and counsel (collectively Paul and Figareau) also moved for summary judgment and argued that, although Publix was entitled to an equitable lien, it should be limited to the "reasonable value" of L.P.'s "surgical treatment." The couple argued that, because L.P.'s shoulder dystocia would have required treatment notwithstanding the negligence of third parties, reimbursement should be limited to the cost of the surgery necessitated by the negligence. And the couple argued that the "reasonable value" of the surgery was $22,164.

The district court granted the motion of Publix for summary judgment and denied Paul and Figareau's motion. The district court ruled that, "under ERISA and in accordance with the plan's terms," Publix was "entitled to an equitable lien by agreement" "for the total amount of benefits paid on behalf of L.P. from the settlement proceeds, which are held in trust by [their] counsel." The district court found that undisputed evidence established that the medical expenses paid by the Plan were for injuries caused by "another party" and the family recovered those expenses in their settlements with those third parties. The district court rejected the couple's arguments to limit the amount of reimbursement as contrary to "the terms of the Plan." And the district court rejected as "immaterial to the resolution of

4

Publix'[s] ERISA claim" the couple's argument that their new expert evidence created a factual dispute regarding what treatment was proximately caused by the negligence of L.P.'s medical team and the hospital.

We review *de novo* an issue of subject-matter jurisdiction. *See Popowski v. Parrott*, 461 F.3d 1367, 1372 (11th Cir. 2006). We also review *de novo* a summary judgment and view the evidence in the light most favorable to the nonmovants. *See Zurich Am. Ins. Co. v. O'Hara*, 604 F.3d 1232, 1236 (11th Cir. 2010).

The district court had subject-matter jurisdiction to entertain the complaint Publix filed because it was based on a federal question. *See* 28 U.S.C. § 1331. Publix sought equitable relief to enforce the reimbursement provision in its benefit plan under section 502(a)(3) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(3). A plan fiduciary may bring a civil action under the Act "to obtain . . . equitable relief to redress . . . [or] to enforce . . . any act or practice which violates . . . the terms of the plan." *Id.* Paul and L.P. agreed "to fully reimburse the Plan" for its payment of medical expenses connected to her injury and to give it "a first priority equitable lien . . . to the extent of benefits paid . . . against any recovery" they made. And Publix sought reimbursement from the monetary recovery that the family received for L.P.'s injury.

The district court did not err by entering summary judgment in favor of Publix based on its complaint for an equitable lien. "As a condition of receiving

benefits," Paul and L.P. agreed to "[i]mmediately reimburse the Plan, out of any recovery made from another party, the amount of medical, prescription or other health care benefits [the Plan] paid for [L.P.'s] injury . . . ." The Plan paid $88,846.39 on claims for treatment for L.P.'s brachial plexus injury, which Paul and Figareau had alleged in their malpractice action was the "direct and proximate" result of negligence by L.P.'s medical team and the hospital for failure to detect, prepare for, and competently deliver L.P. with a shoulder dystocia complication. The family "demanded judgment for all compensable damages" from the medical team and hospital, including "expense[s] of hospitalization and medical and nursing treatment" as well as "vocational care, therapy and treatment necessarily or reasonably obtained for" L.P. And their settlement agreements with the medical team and hospital addressed "all past, present and future claims, . . . expenses and compensation of any nature whatsoever, . . . which [Paul, Figareau, and L.P.] now have, or which may hereafter accrue or otherwise be acquired," including third-party "claims of any nature, whether for contribution, subrogation, indemnity or any other theory." Because L.P. and her parents obtained a monetary recovery "by way of settlement . . . to compensate for [the] losses caused by, or in connection with, [her] injury," under the terms of the Plan, Publix was "entitled to first and full priority reimbursement out of [that] recovery" and to "a first priority equitable lien against [that] recovery . . . ."

6

Paul and Figareau's contrary arguments fail. The couple argues that Publix failed to submit evidence to prove the cost of each medical expense it paid for L.P., but we will not address an argument the couple never raised in the district court. *See In re Pan Am. World Airways, Inc.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f . . . part[ies] hope[ ] to preserve a claim, argument, theory, or defense on appeal, [they] must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."). The couple also argues that Publix failed to prove that "the medical payments for which it seeks reimbursement are related to L.P.'s injuries that arise from the medical malpractice action," but the records of the proceedings in state court make clear that the family sought to recover the medical expenses paid for by the Plan. Furthermore, in the district court, the couple did "not refute" an affidavit Publix submitted that established the Plan paid "claims for services rendered to minor L.P. . . . [for] an injury to the brachial plexus; . . . an injury to the brachial plexus due to birth trauma; and . . . occupational therapy and vocational rehabilitation."

The district court also correctly denied Paul and Figareau's motion for summary judgment based on the unambiguous terms of the Plan. The couple argued that Publix could recover only the "reasonable cost" of L.P.'s surgery, which totaled $22,164. But, as highlighted by the district court, Paul and L.P. expressly agreed to reimburse the Plan "to the extent of [its] payments." Because

"the Plan must be enforced as written," *Zurich Am. Ins.*, 604 F.3d at 1236, Paul and Figareau had to reimburse the Plan for the entire amount it paid for L.P.'s medical expenses.

We **AFFIRM** the summary judgment in favor of Publix.