# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 7, 2013

No. 11-40446

Lyle W. Cayce
Clerk

ACS RECOVERY SERVICES, INC.;
FKI INDUSTRIES, INC.,

Plaintiffs - Appellants

v.

LARRY GRIFFIN; WILLIE EARL GRIFFIN;
LARRY GRIFFIN SPECIAL NEEDS TRUST;
JUDITH GRIFFIN,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Texas

Before STEWART, Chief Judge, and REAVLEY, JOLLY, DAVIS, JONES, SMITH, DENNIS, CLEMENT, PRADO, OWEN, ELROD, SOUTHWICK, HAYNES, GRAVES, and HIGGINSON, Circuit Judges.[*]

EDITH H. JONES, Circuit Judge, joined by STEWART, Chief Judge, and JOLLY, DAVIS, SMITH, CLEMENT, OWEN, SOUTHWICK, GRAVES, and HIGGINSON, Circuit Judges :

ERISA § 502(a)(3)(B) authorizes actions by fiduciaries ". . . to obtain other appropriate equitable relief . . . to enforce . . . the terms of the [ERISA] plan." 29 U.S.C. § 1132(a)(3)(B). The question this court deems enbancworthy is whether ACS Recovery Services, Inc., the administrator, and FK Industries, Inc.,

---

[*] Judge King did not participate in this decision.

No. 11-40446

the sponsor (collectively, "ACS"), of the ERISA plan ("Plan") that covered employee Larry Griffin, can sue Griffin, Griffin's Special Needs Trust, or his ex-wife Judith, for reimbursement of medical expenses incurred by the Plan after Griffin received a tort settlement for his injuries. To what extent, in other words, does ACS's suit seek "appropriate equitable relief" to enforce the Plan's reimbursement provision? Parting company with this court's panel decision, we hold that ACS may recover from the Special Needs Trust the costs the Plan bore on Larry's behalf: the Trust is a proper ERISA defendant; the Trust received funds directly traceable to Larry Griffin's tort recovery; and the Plan held a pre-existing equitable lien by agreement on the proceeds of the recovery after the Plan paid Griffin's medical bills. *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356, 126 S. Ct. 1869 (2006). Under the circumstances of this case, however, we need not rule on whether ACS can recover from Larry, and ACS did not offer evidence to sustain a judgment against Judith. The district court judgment to the contrary is reversed in part, affirmed in part, and remanded.

## BACKGROUND

While Griffin worked for FK Industries, he participated in the company's ERISA welfare benefit plan. The Plan paid over $50,000 in medical expenses for his treatment following a serious automobile accident in 2006. Larry and Judith sued Ashley E. Smith and J-Co Production Management, Inc., the company responsible for the accident, and reached a settlement to pay "cash and periodic payments with a present value sum" just over $294,000.

At the time of the settlement, the Plan provided it "will have a first lien upon any recovery, whether by settlement, judgment, arbitration or mediation" to repay the medical expenses, and it required Larry not to take action that might prejudice the Plan's right to reimbursement. ACS had notified Larry's

2

No. 11-40446

attorney of these provisions shortly after he filed suit. Rather than help Larry comply with the Plan, his attorney devised an artful attempt to insulate the settlement proceeds from the reimbursement provision. His attorney admitted that he structured the settlement "in an effort to legally avoid any equitable lien asserted by the Group Medical Plan . . . ." Accordingly, the settlement first segregated money for attorneys' fees, some additional medical expenses, and for Judith Griffin pursuant to the couple's divorce settlement. The remaining funds (having a "present sum value" of about $148,000) were paid by SAFECO, the defendant's insurer, to Hartford CEBSCO, which was authorized to purchase an annuity from Hartford Life and therewith to make monthly payments of $843.42 for twenty years to a statutory Special Needs Trust,[1] whose trustee is Willie Griffin, Larry's brother. The Trust is authorized to make monthly payments for Larry's benefit.

The settlement documents reflect Larry's approval of this arrangement. On October 24, 2008, the state court approved creating a tax-qualified Special Needs Trust pursuant to Texas Property Code § 142.007 based on the understanding that Larry is "incapacitated" under state law and disabled for federal Social Security purposes. That same day, the state court entered an Order Approving Settlement and of Dismissal ("Order"), signed by Larry and a guardian *ad litem* (among others), that delineated the exact payments to be made to each party including the Special Needs Trust.

The Order referenced the parties' contemporaneously executed Compromise Settlement Agreement ("Agreement"), designated as being by and between "Larry Griffin and Judith Griffin as Plaintiffs . . . ," and Larry signed

---

[1] Accordingly, the settlement funds flow into the Trust's possession.

## No. 11-40446

it as well.  Both the guardian *ad litem* and the parties' attorneys signed the Agreement only "as to form."  This Agreement exchanged the plaintiffs' release of claims for (in pertinent part) the defendants' agreement to pay the Larry Griffin 142 Special Needs Trust ("Trust") certain monthly payments "through annuity issuer, Hartford Life Insurance Company."  The Griffins and the Trust further agreed to an assignment of the defendants' liability to make the periodic payments to Hartford CEBSCO, such that Hartford's obligation to make the periodic payments "shall be no greater" than that of the defendants.  Plaintiffs further consented to holding Hartford to be the "sole obligor" respecting the obligation.  Hartford, as "sole owner of the annuity policy," was to issue the monthly payments to the Trust, c/o Willie Griffin, Trustee.  Finally, the plaintiffs warranted in the Agreement that "no part of the claim" has been assigned or transferred to any person or entity, and that not only have all medical costs been paid, but "any liens pertaining to said care have been released or satisfied."

ACS and FKI, the Plan fiduciaries, were denied reimbursement by the design and intent of this settlement.  They  sued  Larry Griffin, Judith Griffin, the Trust, and Willie Griffin as Trustee under ERISA § 502(a)(3)(B).  Among other claims for relief, the fiduciaries sought a constructive trust upon "no less than $50,076.19 in funds intended to be paid to or received by the Defendants from any recovery made as compensation for injuries caused by the acts of a third party,"[2] and they requested that the defendants be enjoined from interfering with the Plan's right of reimbursement.

---

[2] Judge Prado's dissent asserts that ACS did not plead with sufficient particularity to obtain an equitable lien on the monthly payments received by the Trust under the Settlement Agreement.  We disagree.  Seeking "funds intended to be paid or received by the Defendants" does not limit ACS to a lump sum, nor to funds paid through intermediaries before reaching the Trust and Larry.

No. 11-40446

The district court, approving a magistrate judge's report and recommendation, rejected the fiduciaries' claims for summary judgment and granted Larry Griffin's, Willie Griffin's, and the Trust's cross motions.[3] A panel of this court expanded on the trial court rulings, but the fundamental analysis supporting the appellees rests on the following propositions. First, the Plan's claim seeks legal, not equitable relief as required by § 502(a)(3)(B), because Larry Griffin has neither possession nor control of the settlement funds now held in the annuity. Any judgment against Larry Griffin personally would be for money damages rather than for the enforcement of a constructive trust over the settlement proceeds. Likewise, the Trust cannot be sued for equitable relief for several reasons. It has no possession or control over the annuity, which Hartford owns. Because Larry has no control over the Trust, the Trust cannot be liable as his agent. Finally, since Larry lacked "even fleeting" possession or control over the settlement money that purchased the annuity that funds the Trust, equitable relief is pretermitted against the Trust. This reasoning purports to be compelled by the Supreme Court's decision in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S. Ct. 708 (2002), and this court's decision in *Bombardier Aerospace Emp. Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348 (5th Cir. 2003). Following an unfavorable appellate decision, ACS obtained en banc review.

---

[3] The district court noted that ACS failed to object to the magistrate judge's rejection of the motion for default judgment against Judith Griffin, and it refused further to consider that claim against her. Subsequently, the court's dismissal of the entire case covers ACS's claim against Judith and resulted in a final, appealable judgment as to all parties.

No. 11-40446

## DISCUSSION

### 1. Standard of Review

The panel decision adhered to our circuit precedent in concluding that ACS's failure to support a claim for equitable relief necessitated dismissal for lack of jurisdiction. *See, e.g., Bauhaus USA Inc., v. Copeland*, 292 F.3d 439, 445 (5th Cir. 2002) (affirming the district court's dismissal for lack of subject matter jurisdiction because appellants failed to state a valid claim under § 502(a)(3)). Whatever the origin of this jurisdiction-based reasoning,[4] it is inconsistent with Supreme Court precedent and the majority of sister circuits, for which the failure to state a claim cognizable under federal law is distinct from holding that a court lacks subject matter jurisdiction. The Supreme Court has long held that "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case." *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 89, 118 S. Ct. 1003, 1010 (1998). Subject matter jurisdiction is not implicated unless the claim is "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court], or otherwise completely devoid of merit as not to involve a federal controversy." *Oneida Indian Nation of N.Y. v. Cnty. of Oneida*, 414 U.S. 661, 666, 94 S. Ct. 772, 777 (1974); *see also Adar v. Smith*, 639 F.3d 146, 150–51 (5th Cir. 2011) (en banc), *cert. denied*, 132 S. Ct. 400 (2011). Consistent with these principles, at least five other circuits have held that whether a claim for equitable relief under ERISA § 502(a)(3) has been stated is within federal courts'

---

[4] The *Knudson* decision, holding a plan's claim against the beneficiaries was not for equitable relief, did not clearly rest on either failure to state a claim or lack of jurisdiction. Thus, we recur to basic procedural decisions of the Supreme Court.

No. 11-40446

jurisdiction irrespective of the claim's ultimate merit.[5]   Reinforcing this conclusion is that ERISA grants federal courts exclusive jurisdiction separate and apart from its articulation of causes of action.  *See* 29 U.S.C. § 1132(e).

We align with the majority rule and frame this appeal as requiring a decision whether the Plan stated a claim for equitable relief under ERISA § 502(a)(3).  The interrelated issues, raised because the parties offered evidence outside the pleadings, are whether there was no genuine, material fact issue and the Plan or its adversaries were entitled to judgment as a matter of law.  FED. R. CIV. PRO. 56.

## 2.    Section 502(a)(3).

Guided by Supreme Court decisions that have systematically refined the scope of "appropriate equitable relief," the case law interpreting § 502(a)(3) has evolved over twenty years.  In *Mertens v. Hewitt Assocs.*,  508 U.S. 248, 255, 113 S. Ct. 2063, 2068 (1993), the Court held that "appropriate equitable relief" allowed plaintiffs to seek "a remedy traditionally viewed as 'equitable.'"  In *Knudson, supra*, the Court undertook to differentiate between legal and equitable relief.  When Janette Knudson was seriously injured in a car crash, Great-West paid substantial medical bills under an ERISA plan that authorized the company to be reimbursed from any recovery she received from a third party. *Id*. at 207, 122 S. Ct. at 711.  Knudson won a favorable judgment, and the

---

[5] *Metro Life Ins. Co. v. Price*, 501 F.3d 271, 276-77 (3d Cir. 2007); *Carlson v. Principal Fin. Grp.*, 320 F.3d 301, 307 (2d Cir. 2003); *Cement Masons Health & Welfare Trust Fund for N. Cal. v. Stone*, 197 F.3d 1003, 1008 (9th Cir. 1999); *Blue Cross & Blue Shield of Ala. v. Sanders*, 138 F.3d 1347, 1352-53 (11th Cir. 1998).  The Seventh Circuit's decisions are unclear. *Compare Admin. Comm. of Wal-Mart Stores, Inc., Assocs.' Health & Welfare Plan v. Varco*, 338 F.3d 680, 688 (7th Cir. 2003) (arguably jurisdictional holding), *with Health Cost Controls v. Skinner*, 44 F.3d 535, 537 (7th Cir. 1995) (failure to state a claim).

No. 11-40446

tortfeasor deposited her award directly into a special needs trust with Knudson as beneficiary and her husband as the trustee.

The Court ruled that Great-West could not recover "restitution" from the Knudsons personally under § 502(a)(3)(B) because this was tantamount to legal relief for breach of contract. The majority held that whether restitution is a legal or equitable remedy depends on the basis for the plaintiff's claim. *Id.* at 213, 122 S. Ct. at 714. The Court stated:

[A] plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. *See* 1 Dobbs § 4.3(1), at 587-588; Restatement of Restitution, *supra*, § 160, Comment a, at 641-642; 1 G. Palmer, Law of Restitution § 1.4, p. 17; § 3.7, p. 262 (1978). A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a constructive trust or an equitable lien upon other property of the [defendant]." Restatement of Restitution, *supra*, § 215, Comment a, at 867. Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

*Id.* at 213–14, 122 S. Ct. at 714–15. As the settlement funds were no longer in Knudson's possession, Great-West was seeking "some funds," not necessarily the particular funds obtained from the third party. Significantly, the Court declined to decide whether the ERISA plan might have claimed equitable relief from either the special needs trust or the Knudsons' attorney. *Id.* at 220, 122 S. Ct. at 718. Justice Ginsburg, in dissent, observed that under the majority's reasoning a "constructive trust claim would lie; hence, the outcome of this case

8

would be different if Great-West had sued the trustee of the Special Needs Trust, who has 'possession' of the requested funds, instead of the Knudsons, who do not." *Id*. at 225, 122 S. Ct. at 721 (Ginsburg, J., dissenting).

After *Knudson*, this court decided *Bombardier*, *supra*, and held that an ERISA plan was pursuing "appropriate equitable relief" against a law firm holding funds in its trust account on behalf of a client. The client-beneficiary owed his plan, according to its reimbursement terms, over $13,000 for medical expenses paid on his behalf following a car accident. His settlement with the tortfeasor was deposited in the firm's trust account. The plan sued the law firm and was met with two defenses: (1) the firm, neither a fiduciary nor a signatory to the plan, was not a proper defendant under ERISA, and (2) a constructive trust was improper because the funds were not in the possession of the beneficiary himself. *Id*. at 351. This court rejected both defenses to liability. First, we held that the law firm was a proper party pursuant to the Supreme Court's conclusions that § 502(a)(3) "admits of no limit (aside from the 'appropriate equitable relief caveat' . . .) on the universe of possible defendants," and therefore "authorizes a cause of action against a non-fiduciary, non-'party in interest' . . . [who] holds disputed settlement funds *on behalf of* a plan-participant . . . ." *Id*. at 352–53 (quoting *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 244–46, 120 S. Ct. 2180, 2187 (2000) (emphasis in original)). Second, relying on the holding of *Knudson* while distinguishing it factually, this court held that the plan indeed sought to recover (1) specifically identifiable funds that (2) were in the constructive possession and the legal control of the participant but (3) belonged in good conscience to the plan. *See id*. at 355–58. This court inferred its three-part inquiry from *Knudson*. The funds were in the "constructive possession and control" of the

client despite the firm's claimed contingency fee arrangement because the client/beneficiary's obligation to the plan predated any agreement with the law firm and thus precluded him "from contracting away . . . that which he did not own himself, namely, the [money] that rightfully belonged to the Plan." *Id*. at 357.

Three years after *Bombardier*, the Supreme Court decided *Sereboff v. Mid Atlantic Med. Servs., Inc*., 547 U.S. 356, 126 S. Ct. 1869 (2006). In the wake of *Knudson*, a circuit split had developed about whether an ERISA plan seeking to enforce benefits reimbursement provisions could invoke "equitable relief" under § 502(a)(3)(B). *See Admin. Comm. for WalMart v. Horton*, 513 F.3d 1223, 1226 (11th Cir. 2008) (discussing circuit split). The Court unanimously agreed in *Sereboff* that properly framed relief could be characterized as equitable.[6] The Sereboffs received medical benefits from Mid Atlantic following a car crash under an ERISA plan requiring them to reimburse Mid Atlantic for recoveries from third parties. *Sereboff*, 547 U.S. at 360, 126 S. Ct. at 1872. When they declined to reimburse Mid Atlantic for their settlement with the tortfeasors, the Sereboffs placed the disputed funds in an investment account while the Mid Atlantic litigation was pending. *Id*. at 360, 126 S. Ct. at 1873. Mid Atlantic sued for breach of contract and for imposition of a constructive trust and equitable lien on its portion of the settlement. Summarizing *Knudson*, the Court first pointed out that a constructive trust or equitable lien can be imposed on "'particular funds or property in the defendant's possession.'" *Id*. at 362, 126 S. Ct. at 1874 (quoting *Knudson*, 543 U.S. at 213, 122 S. Ct. at 708). Unlike

---

[6] The Court cited *Bombardier* as one example of the circuit split. *Sereboff*, 547 U.S. at 361 n.1, 126 S. Ct. at 1873 n.1.

No. 11-40446

the Knudsons, the Sereboffs possessed the disputed funds in their investment account. *Id.* at 362–63, 126 S. Ct. at 1874. Mid Atlantic accordingly sought an equitable remedy.

Mid Atlantic's additional burden, however, was to prove that the basis for its claim was equitable. *See id.* at 362, 126 S. Ct. at 1874 (whether the remedy "is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought") (quoting *Knudson,* 543 U.S. at 213, 122 S. Ct. at 708). The Court ascertained that Mid Atlantic's claim was equitable because it sought to enforce an "equitable lien by agreement." Equitable liens by agreement are described in *Barnes v. Alexander*, 232 U.S. 117, 34 S. Ct. 276 (1914), where Justice Holmes wrote that they arise when an agreement identifies a specific fund, distinct from the obligor's general assets, and identifies a particular portion of the fund that is owed to a counter party. *See Sereboff*, 547 U.S. at 364, 126 S. Ct. at 1875. That the agreement is made before the fund comes into existence is of no moment, *Sereboff* reiterated. *Id.* at 366, 126 S. Ct. at 1876. Based on *Barnes*, Mid Atlantic could rely on the "familiar rule of equity," which "allowed [it] to 'follow' a portion of the recovery 'into the [Sereboffs'] hands' 'as soon as [the settlement fund] was identified,' and impose on that portion a constructive trust or equitable lien." *Id.* at 363–64, 126 S. Ct. at 1875 (quoting *Barnes*, 232 U.S. at 123, 34 S. Ct. 276).

Particularly significant here is the Court's rejection of the Sereboffs' argument that Mid Atlantic's claim was not equitable because equitable restitution requires a strict tracing of the tainted assets. First, the Court distinguished equitable restitution from equitable liens by agreement and affirmed that *Barnes* places no similar tracing requirement on the latter type of claim. The Court also refused to hold that *Knudson* crafted a new tracing

No. 11-40446

requirement because *Knudson* described only "in general terms" a fiduciary's right to recover equitable restitution, and "[t]here was no need in *Knudson* to catalog all the circumstances in which equitable liens were available in equity . . . ." *Id.* at 365, 126 S. Ct. at 1876. Neither *Knudson* nor *Sereboff*, in other words, exhausts the universe of "appropriate equitable relief," so long as both the claim and the relief sought sound in equity.

Following these decisions, other circuits have readily enforced ERISA plan reimbursement terms against third parties holding tort settlements achieved by plan beneficiaries. Constructive trusts have been imposed to enforce a plan's equitable lien by agreement on settlement proceeds held by a beneficiary's tort lawyer, *Longaberger v. Kolt*, 586 F.3d 459 (6th Cir. 2009); by a trustee of his wife's special needs trust, *Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Shank*, 500 F.3d 834 (8th Cir. 2007); and by a conservator acting as a trustee for a special needs trust. *Admin Comm. of Wal-Mart Stores, Inc. Assocs.' Health & Wealth Plan v. Horton*, 513 F.3d 1223 (11th Cir. 2008).[7] In each of these cases, the courts held that, according to *Knudson* and *Sereboff*, an equitable lien for reimbursement attached to settlement proceeds as soon as a settlement fund arose from the injuries requiring plan

---

[7] Courts have also imposed constructive trusts on ERISA plan beneficiaries who accepted tort settlements or disability payments without reimbursing the plan under an equitable lien by agreement. *See, e.g., CGI Tech. & Solutions Inc. v. Rose*, 683 F.3d 1113 (9th Cir. 2012), *cert. granted, judgment vacated on other grounds*, No. 12-240, 2013 WL 1704705 (U.S. Apr. 22, 2013); *US Airways, Inc. v. McCutchen*, 663 F.3d 671 (3d Cir. 2011), *judgment vacated on other grounds*, 133 S. Ct. 1537 (2013); *Funk v. CIGNA Grp. Ins.*, 648 F.3d 182, 195 (3d Cir. 2011); *Cusson v. Liberty Life Assurance Co. of Boston*, 592 F.3d 215, 231 (1st Cir. 2010); *Popowski v. Parrott*, 461 F.3d 1367, 1373 (11th Cir. 2006); *Dillard's v. Liberty Life*, 456 F.3d 894, 901 (8th Cir. 2006).

No. 11-40446

payments. *See*, *e.g. Longaberger*, 586 F.3d at 467. The discussion in *Horton*, *supra*, quotes, *inter alia*, the Restatement of Restitution:

> Where property is held by one person upon a constructive trust for another, and the former transfers the property to a third person who is not a bona fide purchaser, the interest of the beneficiary is not cut off. In such a case, he can maintain a suit in equity to recover the property from the third person, at least if his remedies at law are not adequate.

*Id.* at 1228 (quoting RESTATEMENT OF RESTITUTION §160 cmt. g (1937)). *Horton*'s salient conclusion is:

> In the instant case, the Administrative Committee properly seeks equitable restitution of a specifically identifiable fund in possession of a defendant. As required by *Knudson*, the [Plan] asserts title and right to possession of particular property that is in the hands of Mrs. Werber in her capacity as Joshua's conservator. The money Mrs. Werber holds in trust has been identified as belonging in good conscience to the [Plan] by virtue of the Plan's terms, and the money can clearly be traced to a particular fund in the defendant's possession. The fact that Mrs. Werber holds the funds as a third party does not defeat the [Plan's] claim. *Under* Knudson*, Sereboff*, *and the other authorities cited above, the most important consideration is not the identity of the defendant, but rather that the settlement proceeds are still intact, and thus constitute an identifiable res that can be restored to its rightful recipient.*

*Id.* at 1228–29 (emphasis added).

Most analogous to the present case is *Shank*, which, in one sentence, dispatched a trustee's defense that the plan's suit to place a constructive trust on his injured wife's special needs trust sought legal, not equitable relief. The court held:

> The [plan's] claim meets *Sereboff*'s requirements for equitable restitution: it seeks (1) the specific funds it is owed under the terms of the plan—i.e., the money it paid to cover Shank's medical expenses; (2) from a specifically identifiable fund that is distinct from the Shanks' general assets—i.e., the special needs trust; and (3) that is controlled by defendant James Shank, the trustee.

13

No. 11-40446

*Shank*, 500 F.3d at 836.  Analogous to *Kundson* and this case, Mrs. Shank did not have "possession" of the funds, yet the constructive trust claim was enforceable against the special needs trust.

*Longaberger* instructs on the lack of a tracing requirement in connection with the enforcement of an equitable lien by agreement.  There, the ERISA plan sued a beneficiary and his lawyer for benefits reimbursement after a settlement had been reached with the tortfeasor.[8]  Kolt, the attorney, moved for summary judgment on the basis that the plan sought legal, not equitable relief because the settlement funds had already been disbursed from his Interest on Lawyer Trust Accounts (IOLTA) account before the plan filed suit.  The Sixth Circuit affirmed summary judgment for the plan and against the attorney.  The plan's equitable lien attached when the settlement funds were identified.  As to tracing, the Court noted:

> The fact that Kolt chose to disregard Longaberger's first priority lien and commingle the settlement funds does not defeat Longaberger's claim for equitable relief, because under *Sereboff, Longaberger was free to follow a portion of the settlement funds into Kolt's hands*.

*Longaberger*, 586 F.3d at 469 (emphasis added).

*Longaberger* is reminiscent of *Bombardier*'s holding, even before *Sereboff*, that "[t]his pre-existing reimbursement obligation to the [p]lan precluded [the beneficiary] from contracting away to the law firm that which he did not own himself, namely, the right to all or any portion of the [sum] that rightfully belonged to the [p]lan." *Bombardier*, 354 F.3d at 357.  When the beneficiary accepted a settlement subject to the plan's prior lien, he could not transfer the proceeds, in any of the above cases, free and clear to a third party.  Morever, the

---

[8] A judgment for restitution was entered against the beneficiary, who failed to appeal.

No. 11-40446

third party's liability even after the disposition of tainted proceeds was held remediable in equity by a constructive trust because no strict tracing requirement existed in this situation.

From *Knudson*, *Sereboff*, and applicable circuit case law, the following conclusions seem inescapable. Larry Griffin had a pre-existing agreement with ACS to reimburse the Plan for its payments on his behalf in the event of a third-party recovery. When Larry Griffin signed the Order approving settlement and the Agreement awarding compensation for his injuries, an equitable lien by agreement arose for the benefit of ACS. Griffin's right to receive money from the settlement was subordinate to the Plan's lien. Both the annuity and its monthly payments to the Trust, which accrue to Larry's benefit, are an identifiable fund to which the Plan's lien attaches. The money belongs "in good conscience" to the Plan to the extent of the costs it incurred. Under § 502(a)(3)(B), appropriate equitable relief demands the imposition of a constructive trust on the proceeds of the annuity as they accrue to the Special Needs Trust.[9] ACS should be awarded this relief from the Trust and Willie Griffin, Trustee.[10]

---

[9] Contrary to Judge Prado's dissenting opinion, it is irrelevant whether the entire $50,076.19 is in the Trust's possession at any particular time. The constructive trust still attaches to the particular funds owed to ACS as they reach the Trust penny by penny. It makes little sense to contend that equity would reach the funds if the Trustee had received the settlement money as a lump sum and then placed it in an annuity of Hartford, but because Hartford allegedly got the same money first and disburses it to the Trustee, no equitable remedy is available.

[10] Judge Haynes's dissent places the burden on Congress to provide ERISA plans a "first money" right to funds recovered by a beneficiary from a third party. In doing so, the dissent overlooks the fact that § 502(a)(3) serves to enforce the *contractual terms* of ERISA plans. *See McCutchen*, 133 S. Ct. at 1547–49. The plans can create "first money" rights similar to those provided by statutes.

No. 11-40446

As to Larry's receipt of benefits from the Special Needs Trust, the situation is less clear.  Confronted with an ERISA plan beneficiary who had received, but dissipated or commingled, disability benefits for which the plan claimed a setoff, the Seventh Circuit authorized the imposition of a constructive trust. *Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 621 (7th Cir. 2008).  The court relied on *Sereboff* in holding that Gutta and the plan had formed an equitable lien by agreement, and because strict tracing is not required, a remedial trust could be imposed notwithstanding Gutta's dissipation or commingling of the fund. *Id*. at 620–21; *see also Cusson v. Liberty Life Assurance Co.*, 592 F.3d 215, 231 (1st Cir. 2010); *Funk v. CIGNA Grp. Ins.*, 648 F.3d 182, 194–95 (3d Cir. 2011).  On the other hand, the facts in *Knudson* so closely parallel those of the instant case as to render a different outcome, even an outcome predicated on *Sereboff*, arguable.  We do not reach a decision on Larry's liability to the Plan, because imposing a constructive trust on his Trust affects exactly the same proceeds and effects the same result as would an equitable remedy against Larry.

ACS must fail in its attempt to recover from Judith Griffin, however, because the fiduciaries did not demonstrate that the money she received from the settlement was attributable to Larry's injuries rather than her personal claims arising from the accident.

Several objections have been made against fastening equitable relief on the Trust. The principal one is that because the Trust receives proceeds from an annuity purchased by Hartford with the settlement fund, Larry lacks possession or control of the settlement money and stands in the same position as the Knudsons.  This reasoning is flawed.  First, unlike in *Knudson*, the Trust is a defendant.  The *Knudson* majority expressly reserved this point.  As Justice

16

No. 11-40446

Ginsburg's dissent forecast, *supra* at 225, 122 S. Ct. at 721, this distinction makes a difference, because the Trust administers proceeds directly traceable to the settlement.

Another objection is that *Bombardier* prescribed a three part "test" in which the *beneficiary's* possession and control are required at the time of suit. To the extent *Bombardier* embraced such a test, it must yield to the higher subsequent authority of *Sereboff,* which states that the funds only need to be in the possession of the *defendant*. *Sereboff*, 547 U.S. at 362, 126 S. Ct. at 1874.[11] In any event, the Court's *Bombardier description* of the factors that led to the ERISA plan's successful suit for equitable relief may be viewed as neither a *prescription* for liability in all § 502(a)(3)(B) cases nor necessarily a *proscription* of other varieties of equitable claims. *Bombardier*'s result is harmonious with *Sereboff* and post-*Sereboff* case law. *See, e.g., Funk*, *supra*; *Cusson*, *supra*; *Gutta*, *supra*; *Longaberger*, *supra; but cf. CGI Tech. & Solutions Inc. v. Rose*, 683 F.3d 1113, 1118 (9th Cir. 2012) (holding that the ERISA plan was not entitled to funds held in a trust by the beneficiary's attorney), *petition for cert. filed* (Aug. 24, 2012) (No. 12-240).

Additionally, the bolder assertion that Larry "never" had possession or control of the settlement fund ignores the instant facts and the rationale of *Sereboff*. Without Larry's injury, there would have been no Plan payments for his medical costs nor a settlement. The settlement documents he signed fully explain his assent to the disposition of the fund. He had at least constructive

---

[11] *Bauhaus* is overruled to the extent it is irreconcilable with *Sereboff*'s requirement that the funds only need to be in the defendant's possession.

possession and control of the fund to facilitate the settlement.[12]  He would not have agreed to indemnify the settling parties and Hartford for unpaid medical bills had he expected to receive nothing from the settlement.  Griffin's attempt to divorce himself from the origin of the fund and its disposition is no more persuasive than if he had directed the money to a close relative.  But the more important point, as *Bombardier* put it, is that he could not give away that which he did not possess.  *Sereboff* authorized resort to the beneficiaries' segregated account only after the Supreme Court concluded the plan had an equitable lien by agreement that attached at the fund's creation.  So, here, a holding that no equitable lien by agreement arose would blink reality and elevate form over substance.

A final objection against holding the Trust liable as the recipient of the settlement fund or its proceeds is that statutory special needs trusts are "special."  They are vehicles for the support and care of disabled individuals whose primary purpose is to maintain the beneficiaries' eligibility for public benefits like Medicaid.  *See* 1 Stuart Zimring, Rebecca C. Morgan, Bradley J. Frigon & Craig C. Reaves, FUNDAMENTALS OF SPECIAL NEEDS TRUSTS, §§ 1.04, 1.05 (Matthew Bender 2012).  Texas, like many states, authorizes such trusts. TEX. PROP. CODE ANN. § 142.005.  Nevertheless, although favoring such trusts in certain respects, *see* 42 U.S.C. § 1396p(d)(4)(A) (providing that assets held in a special needs trust do not affect an individual's eligibility for Medicaid), Congress did not exclude them as potential defendants from the broad reach of ERISA § 502(a)(3).  Two circuits have held a special needs trust and a similar conservatorship arrangement liable for equitable restitution of ERISA plan

---

[12] Contrary to the dissenting opinions, we do not find the Trust's self-serving declarations dispositive on the issue of possession.

benefits. *See Shank*, *supra*; *Horton*, *supra.* And in *Knudson*, the Court pointedly noted the absence of the special needs trust as a defendant, while Justice Ginsburg implied that the trust's possession of the identifiable settlement fund could render it liable. There is nothing inconsistent in maintaining special needs trusts but also insisting they not be funded with proceeds transferred in violation of a beneficiary's duty to satisfy an equitable lien by agreement with his ERISA plan.

## Conclusion

Larry Griffin's Trust could have been funded by an annuity reduced to satisfy his reimbursement obligation to the Plan. He and his attorneys chose instead to disregard the Plan's equitable lien by agreement, as they attempted to divorce Larry and the Trust from possession and control of the settlement funds. Against this ruse, ACS asserts an equitable claim for restitution and seeks the equitable remedy of a constructive trust over the proceeds of the settlement fund as they come into the Trust's possession. As we have explained, this claim is well supported in law. For the foregoing reasons, we REVERSE IN PART, AFFIRM IN PART, and REMAND for the imposition of equitable relief upon the Trust through Willie Griffin, Trustee.

No. 11-40446

PRADO, Circuit Judge, concurring in part and dissenting in part:

I agree with much of the Court's analysis regarding the scope of "appropriate equitable relief" under § 502(a)(3)(B). That analysis, however, should lead to the denial of ACS's claims. Instead, the Court crafts an unrequested remedy in conflict with Supreme Court precedent. Though I concur in the portion of the judgment affirming the district court's denial of relief against Judith Griffin and Larry Griffin, I dissent from the award of relief against the Trust and Trustee.

Section 502(a)(3)(B) authorizes "those categories of relief that were *typically* available in equity." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993). Elaborating on this construction, the Supreme Court has explained that two factors must be considered equitable to justify relief under § 502(a)(3)(B): (1) "the basis for the plaintiff's claim," and (2) "the nature of the underlying remedies sought." *Great–W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (alterations omitted); *see also Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 361–63 (2006). The Court made clear in *Sereboff* that the first factor is satisfied when an ERISA fiduciary seeks to enforce a plan's reimbursement provision because "case law from the days of the divided bench" would recognize such a claim as enforcing an equitable lien by agreement. 547 U.S. at 363. Thus, that factor does not impede recovery; the basis for ACS's claim is equitable.

But ACS must also show that its requested remedy is equitable rather than legal. "[A] judgment imposing a merely personal liability on the defendant to pay a sum of money" is a legal remedy. *Knudson*, 534 U.S. at 213. An equitable remedy, by contrast, seeks the return of "money or property [that is] identified as belonging in good conscience to the plaintiff [and can] clearly be

20

traced to particular funds or property in the defendant's possession." *Id.* Though it takes the form of a payment of money, the remedy of restoring to the plaintiff particular funds in the defendant's possession is equitable because it is as much a declaration that the plaintiff is the true owner of the funds as it is a money judgment. *See id.* ("A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner."). Thus, for the remedy to lie in equity, "the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214. If the defendant does not possess the funds, the underlying basis of the equitable remedy is lost. *See, e.g.*, *Amschwand v. Spherion Corp.*, 505 F.3d 342, 346 (5th Cir. 2007) ("[T]he *sine qua non* of restitutionary recovery available under § 502(a)(3) is a defendant's possession of the disputed res."), *implicitly overruled on other grounds by CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011), *as recognized in Gearlds v. Entergy Servs. Inc.*, 709 F.3d 448, 450–52 (5th Cir. 2013); *id.* at 347 ("[P]ossession is the key to awarding equitable restitution in the form of a constructive trust or equitable lien."); *id.* at 347–48 ("A defendant's possession of the disputed res is central to the notion of a restitutionary remedy, which was conceived not to assuage a plaintiff's loss, but to eliminate a defendant's gain."); *Restatement (Third) of Restitution and Unjust Enrichment* § 55 cmt. h (2011) ("If the claimant cannot show an equitable entitlement to specific property in the hands of the defendant, the underlying basis of the remedy is lost.").

Given this emphasis on possession, it is curious that the Court today grants relief when none of the named defendants actually possesses the disputed

No. 11-40446

funds.[1]  Reading the Court's opinion, one gets the impression that the funds

reside in the Trust, waiting to be returned to their rightful owner.  In reality,

however, neither the Trust nor the Trustee possesses the settlement funds that

ACS claims an entitlement to.  Those funds were instead transferred to Hartford

CEBSCO to fund the annuity.  ACS's summary judgment evidence confirms this

fact.  ACS requested that Larry Griffin "[i]dentify all moneys received and/or

disbursed by [the Trust], and state the current balance of funds held by [the

Trust]."  Larry responded,

> Since the date of the settlement, Mr. Griffin has received $843.00
> per month in payments administered by [the Trust].  *The [Trust]
> does not have and has not had a balance of funds held in it.*  Rather,
> periodic payments are made to it from Hartford Life Insurance

---

[1] The Court's reliance on *Sereboff*'s "elimination" of a strict tracing requirement to justify relief against the Trust is unpersuasive.  In *Sereboff*, the Court explained that "[w]hen an equitable lien was imposed as restitutionary relief, it was often the case that an asset belonging to the plaintiff had been improperly acquired by the defendant and exchanged by him for other property."  547 U.S. at 364.  In this situation equity required that the plaintiff identify the specific funds that he lost and trace it into the defendant's funds or assets to justify relief.  *Id.*  But, the Court explained, "an equitable lien sought as a matter of restitution, and an equitable lien 'by agreement' . . . were different species of relief."  *Id.* at 364–65.  A plaintiff enforcing an equitable lien *by agreement* was not required to identify an asset he originally possessed.  *Id.* at 365.  This is a sensible distinction as the funds subject to an equitable lien by agreement would not necessarily be in existence at the time the agreement was made.  *See id.* at 365–67.

All of this discussion, however, was in the context of whether § 502(a)(3)(B) could ever authorize an action to enforce a reimbursement provision—a question that had previously divided courts of appeals.  *See id.* at 361.  In essence, the Court simply stated that it is not an obstacle to relief that a plan cannot show that it originally possessed the disputed funds.  The Court did not, however, somehow eliminate *Knudson*'s requirement that a plaintiff seek recovery from a particular fund in the *defendant*'s possession.  If it had, the Court would have had no reason to question whether the defendant in *Sereboff* possessed the disputed funds.  The Court did, however, analyze the defendant's possession, ultimately holding that the plaintiff satisfied the requirement because it sought "to recover a particular fund from the defendant."  *Id.* at 363.  Here, the Court fails to adequately address how the requirement that the defendant be in possession of the specified funds has been satisfied as to the Trust.

No. 11-40446

> Company at the direction of Hartford [CEBSCO] to fund monthly payments to [the Trust] which were then paid to Mr. Griffin.

(emphasis added). Thus, the only money in the Trust at any given time comes in the form of monthly payments, which are then funneled directly to Larry. This is reflected in the Court's remedy: "appropriate equitable relief demands the imposition of a constructive trust on the proceeds of the annuity *as they accrue to the Special Needs Trust*." Slip Op. at 15 (emphasis added).

But ACS did not seek to satisfy its claim with a payment plan. Instead, ACS alleged that Larry and the Trust "now hold or shortly will hold for the benefit of the Plan proceeds of settlement in an amount no less than $50,076.19" and requested "[t]hat a constructive trust be impressed upon *no less than* $50,076.19 in funds intended to be paid to or received by the Defendants from any recovery made as compensation for injuries caused by the acts of a third party." (emphasis added). Though ACS invoked the label "constructive trust," it did not seek the return of any funds in a defendant's possession, nor did it, upon learning how the settlement fund was distributed, amend its complaint to seek the imposition of a constructive trust on the proceeds of the annuity or on the funds used by Hartford CEBSCO to purchase the annuity. ACS simply requested "[t]hat judgment be entered against the Defendants in the amount of no less than $50,076.19." It is not enough that an equitable remedy can be conceived of on these facts. ACS must have sought "to restore to [itself] particular funds or property in the defendant's possession." *Knudson*, 534 U.S. at 214. Because it did not, the remedy ACS sought was legal. *Cf. CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878–79 (2011) ("We noted [in *Knudson*] that the fiduciary sought to obtain a lien attaching to (or a constructive trust imposed upon) money that the beneficiary had received from the tort-case defendant. But

23

No. 11-40446

we noted that the money in question was not the particular money that the tort defendant had paid. And, traditionally speaking, relief that sought a lien or a constructive trust was legal relief, not equitable relief, unless the funds in question were *particular* funds or property in the defendant's possession." (internal quotation marks omitted)).

The Court nonetheless crafts a remedy against the Trust but stops short of granting the same relief against Larry, reasoning that "the facts in *Knudson* so closely parallel those of the instant case as to render a different outcome [for Larry], even an outcome predicated on *Sereboff*, arguable." Slip Op. at 15. This reluctance reveals the flaw in the Court's approach. The Court is undoubtedly correct in seeing a conflict with *Knudson* because ACS's claim against Larry is identical to the claim rejected in *Knudson*. But why does the claim against the Trust not suffer the same fate? It is true that ACS included the Trust as a defendant where the plaintiff in *Knudson* did not, but that is a hollow distinction when the Trust is as empty as the beneficiary's pockets. The reason the outcome would have been different in *Knudson* had the Trust been included as a defendant is that the Trust was the entity that possessed the funds. *See Knudson*, 534 U.S. at 214 ("Here, the funds to which petitioners claim an entitlement under the Plan's reimbursement provision—the proceeds from the settlement of respondents' tort action—are not in respondent's possession. As the order of the state court approving the settlement makes clear, the disbursements from the settlement were paid by two checks, one made payable to the Special Needs Trust and the other to respondents' attorney . . . .").[2] As

---

[2] Indeed, most of the cases from other circuits the Court cites involve specified funds that are intact and in the possession of a defendant. *See, e.g., Admin. Comm. for Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan v. Horton*, 513 F.3d 1223, 1228–29 (11th Cir. 2008)

24

## No. 11-40446

mentioned above, that is not the case here.  Instead, the Trust and Larry are in the same position: neither possesses the disputed settlement fund, and both simply receive periodic payments from it.  If relief were permissible on these facts, the *Knudson* Court could have produced a similar remedy to the one the Court seeks to impose today.  It did not, however, and we should follow that example.

I appreciate the Court's desire to provide a remedy in this case.  Larry's attorney deliberately structured the settlement to avoid the undisputed obligation to reimburse ACS and, during oral argument, even went so far as to describe this undertaking as similar to money laundering.  But it is not our duty to do ACS's work for it.  It should be clear by now that a plan seeking to enforce a reimbursement provision must seek the return of particular funds from whatever party possesses them.  Because ACS did not, I respectfully dissent.

---

("In the instant case, the Administrative Committee properly seeks equitable restitution of a specifically identifiable fund in possession of *a defendant*.  As required by *Knudson*, the Administrative Committee asserts title and right to possession of particular property that is *in the hands* of Ms. Werber in her capacity as Joshua's conservator.  The money Ms. Werber holds in trust has been identified as belonging in good conscience to the Administrative Committee by virtue of the Plan's terms, and the money can clearly be traced to a particular fund *in the defendant's possession*." (emphases added)); *Admin. Comm. of Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan v. Shank*, 500 F.3d 834, 836 (8th Cir. 2007) ("The Committee's claim meets *Sereboff*'s requirements for equitable restitution: it seeks (1) the specific funds it is owed under the terms of the plan—i.e., the money it paid to cover Shank's medical expenses; (2) from *a specifically identifiable fund* that is distinct from the Shank's general assets—i.e., the special needs trust; and (3) that is *controlled by defendant* James Shank, the trustee." (emphases added)).

No. 11-40446

HAYNES, Circuit Judge, joined by REAVLEY, DENNIS, and ELROD, Circuit Judges, concurring in part and dissenting in part:

I concur with the portion of the judgment affirming the district court's denial of relief against Judith Griffin and Larry Griffin.[1]  I part ways with the majority opinion's reversal as to the Larry Griffin 142 Special Needs Trust (the "Trust") and its trustee, Willie Earl Griffin (the "Trustee").  This appeal presents the narrow question of whether an ERISA plan, under § 502(a)(3),  may exercise its subrogation right against a special needs trust established to benefit a disabled beneficiary.  I submit that it cannot.  Accordingly, I respectfully dissent from the majority opinion's award of relief for the Appellants against the Trust and Trustee.

## I.    No Explicit "First Money" Right Exists Under ERISA

The majority opinion's focus on the existence of an equitable lien by agreement between the Plan and Larry Griffin overlooks a critical fact: Congress has not provided ERISA plans a "first money" right to funds recovered by a beneficiary from a third party.  A "first money" right provides a statutory first right to any funds recovered by beneficiaries from third-party tortfeasors.  Many states have created such a right in the context of workers' compensation

---

[1]  The majority opinion concludes it is not necessary to reach a decision concerning Larry Griffin because it grants the Appellants the relief they seek against other defendants. In my view, the Supreme Court's holding in *Great-W. Life & Annuity Insurance v. Knudson* bars recovery against Larry Griffin in any event. *See* 534 U.S. 204, 214 (2002) (holding that a plan's beneficiary—who was entitled to the benefits of a special needs trust—could *not* be held liable under § 502(a)(3) because he did not have possession of the funds at issue). Further, the Appellants have not identified any funds—including any potential payments from the Trust to Larry Griffin—related to the settlement that are in Larry Griffin's possession. Although there is some indication in the record that some monies were paid from the Trust to Larry Griffin, the Plan failed to develop any facts in this regard or to negate the fact that the Trust is a special needs trust.  The Appellants have failed to state a valid claim against Larry Griffin.

No. 11-40446

benefits. For example, the Texas Labor Code specifically provides that "[t]he net amount recovered by a claimant in a third-party action shall be used to reimburse the insurance carrier for benefits, including medical benefits, that have been paid for the compensable injury." TEX. LAB. CODE ANN. § 417.002(a); *see also Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 530 (Tex. 2002) (explaining that "first money paid [to] or recovered by the employee, or his representatives, belongs to the compensation carrier paying the compensation, and until it is paid in full, the employee or his representatives have no right to any funds." (alteration in original) (citation and quotation marks omitted)). In addition to Texas, over half of the states have provided a similar "first money" right to payments recovered by recipients of workers' compensation funds.[2]

With regard to ERISA, Congress could similarly have provided plans with a "first money" right to any payments from third parties recovered by a plan's beneficiaries.[3] Instead of providing such relief, however, Congress simply

---

[2]    *See* ALA. CODE § 25-5-11; ALASKA STAT. § 23.30.015; ARIZ. REV. STAT. ANN. § 23-1023(D); CAL. LABOR CODE § 3852; COLO. REV. STAT. § 8-41-203; CONN. GEN. STAT. § 31-293; 19 DEL. CODE ANN. § 2363; FLA. STAT. § 440.39; HAW. REV. STAT. § 386-8; IDAHO CODE ANN. § 72-223; IOWA CODE § 85.22; ME. REV. STAT. ANN. tit. 39-A, § 107; MD. CODE ANN. LAB. & EMPL. § 9-902; MASS. GEN. LAWS ANN. ch. 152, § 15; MISS. CODE ANN. § 71-3-71; NEV. REV. STAT. § 616C.215; N.H. REV. STAT. ANN. § 281-A:13; N.J. STAT. ANN. § 34:15-40; N.Y. WORKERS' COMP. LAW § 29; N.D. CENT. CODE § 65-01-09; OR. REV. STAT. § 656.593; R.I. GEN. LAWS § 28-35-58; S.D. CODIFIED LAWS § 62-4-39; TENN. CODE ANN. § 50-6-112; VA. CODE ANN. § 65.2-309; W. VA. CODE ANN. § 23-2A-1.

[3]    Indeed, Congress has established such a remedy in other contexts. Specifically, Congress expressly provides a "first money" right for states to seek reimbursement of medical expenses paid on behalf of a Medicaid beneficiary from the beneficiary's tort recovery. *See Wos v. E.M.A. ex rel. Johnson*, 133 S. Ct. 1391, 1396 (2013) ("Congress has directed States, in administering their Medicaid programs, to seek reimbursement for medical expenses incurred on behalf of beneficiaries who later recover from third-party tortfeasors."); *see also* 42 U.S.C. § 1396k(a)(1)(A) (eligibility for Medicaid assistance requires an individual "to assign the State any rights . . . to payment for medical care from any third party").

27

provided a general right to equitable relief to redress violations of or to enforce a plan's terms, and specifically did not provide a contractual or statutory right of recovery like the state workers' compensation programs. *See* 29 U.S.C. § 1132(a)(3).

Allowing the Plan to reach through a special needs trust under ERISA § 502(a)(3)—thereby effectively providing the Plan a "first money" right—would disrupt the mechanism specifically established by Congress to provide for disabled individuals. Had Congress intended this consequence, it could have provided that a plan has a right to recover any medical benefits paid to a beneficiary from a third-party settlement or provided for specific enforcement of a contractual "first money" right. It did not, however, and we are not free to upset this delicate balance struck by Congress, particularly in the ERISA arena. *See Mass. Mut. Life Ins. v. Russell*, 473 U.S. 134, 146 (1985) (noting that "[t]he six carefully integrated civil enforcement provisions found in § 502(a) . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly . . . [, especially in light of] ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a 'comprehensive and reticulated statute'" (citation omitted)). Accordingly, the relief the Appellants seek lies with Congress, not this court.

## II.   No "Possession" So No "Tracing"

The majority opinion posits that the Trust's argument is one of "strict tracing" and then rejects such a tracing argument. The majority opinion submits that the money can be traced from Larry Griffin to the Trust and the Trustee, thereby making them proper targets for equitable relief. However, this is not a question of tracing, "strict" or otherwise. The tracing argument is unavailing as

to the Trust and the Trustee because it does not work as to Larry Griffin—there is nothing to "trace" from Larry Griffin into the Trust.

The tracing cases cited in the majority opinion address situations where the funds sought are all or partially within the possession or control of the defendant-beneficiary but they have been "commingled" or "dissipated" such that the exact funds are not identifiable. *See, e.g.*, *Longaberger Co. v. Kolt*, 586 F.3d 459, 469 (6th Cir. 2009) (noting that a lien applied when the funds became identifiable); *Gutta v. Standard Select Ins. Plans*, 530 F.3d 614, 621 (7th Cir. 2008) (noting that strict tracing is not required, and a plan may bring a suit even if the money is not specifically traceable to current assets). The problem with relying on these cases is that the money was once in the direct possession or control of the defendant-beneficiary (i.e., there is something to "trace"). Indeed, in *Longaberger* the beneficiary had more than "fleeting possession and control"—the money sat in the IOLTA account for several months and was therefore directly in the defendant-beneficiary's constructive possession and control. 586 F.3d at 462. Here, as recognized in the settlement agreement and Trust documents, Larry Griffin never had possession of the funds. Because *Knudson* precludes a finding that the money could be traced from Larry Griffin into the Trust, there is nothing to "trace," strictly or otherwise, in this case. *See* 534 U.S. at 214. Thus, neither *Gutta* nor *Longaberger* counsel in favor of liability for the Trust or the Trustee.

## III. Supreme Court and Fifth Circuit Precedent Do Not Support Recovery from the Trust

A. Defendant's Possession or Control

The Supreme Court has not directly considered whether equitable relief under § 502(a)(3) allows a plan to recover against a special needs trust or its

trustee.  The Court discussed the issue in *Knudson* where an ERISA plan's stop-loss insurer sued the Knudsons under § 502(a)(3) to recover medical benefits it had paid on the beneficiary's behalf.  *Id.* at 207.  In accordance with the ERISA plan's reimbursement provision, the insurer sought to recover from the funds the beneficiary received from the underlying tortfeasor, which she had placed in a special needs trust.  *Id.*  In denying relief, the Court explained that "for restitution to lie in equity, the action must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular *funds or property in the defendant's possession*."  *Id.* at 214 (emphasis added).  Because the settlement order showed that the funds were paid to a special needs trust and to the Knudsons' attorney—neither of whom were named as defendants—the court concluded that the claim was legal, not equitable.  *Id.*  Ultimately, while *Knudson* left open the question of "whether petitioners could have obtained equitable relief against . . . the trustee of the Special Needs Trust," its reasoning (focusing on possession) is not supportive of recovery from the Trust.  *Id.* at 220.

The Supreme Court later elaborated on the availability of § 502(a)(3) relief in *Sereboff v. Mid Atlantic Medical Services*, 547 U.S. 356 (2006).  In *Sereboff*, a plan successfully sought reimbursement for medical expenses paid on behalf of a beneficiary from the proceeds of the beneficiary's settlement with a tortfeasor, which were held in an investment account.  547 U.S. at 359, 369.  For its part, *Sereboff* set forth four significant elements for seeking equitable relief in § 502(a)(3) claims: (1) the funds must be specifically identified by the plaintiff, (2) the funds must be in the possession and control of the defendant, (3) commingling of funds will not prevent recovery, and (4) the plaintiff need not trace back to the exact same tainted funds and show that they were in existence

No. 11-40446

when the equitable lien agreement was entered into.    *Id.* at 363-66.[4] Importantly, the simple fact that a plan does not have to establish that the defendants possessed the original funds in question does not exempt the plan from having to show that the defendants actually possess the identified funds subject to the lien.  *Id.* at 362-63.[5]

Our court, following *Knudson*, declined to expand the scope of relief for ERISA plans under alternative theories of recovery, such as unjust enrichment, because "ERISA's civil enforcement provision specifically and clearly addresses [the scope of available relief], thereby eschewing any possibility that a 'gap' exists in the statutory text that would permit us to employ federal common law to create [remedies not provided for in the statute]." *Coop. Benefit Adm'rs, Inc. v. Ogden*, 367 F.3d 323, 330 (5th Cir. 2004).  Instead, we established a three-part test for determining whether the relief sought is equitable and, therefore, available under ERISA. *See Bombardier Aerospace Emp. Welfare Benefit Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 356 (5th Cir. 2003).  It asks whether the plan seeks "to recover funds (1) that are specifically identifiable, (2) that belong in good conscience to the [p]lan, and (3) that are within the

---

[4] The majority opinion notes that "[p]articularly significant here is [*Sereboff's*] rejection of the [beneficiaries'] argument that [the plan's] claim was not equitable because equitable restitution requires a strict tracing of the tainted assets."  Slip Op. at 11.  Larry Griffin never had possession of the funds.  Therefore, as discussed above, "strict" tracing is not the issue because there is nothing to trace.

[5] The Supreme Court recently re-examined *Sereboff* in *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1545-47 (2013).  That case addressed neither the issue of possession nor a special needs trust.  Instead, it holds that equitable defenses that are contrary to the terms of the ERISA plan cannot defeat the plan's right to equitable reimbursement, a matter not at issue here.  *See id.* at 1548.  The opinion's only mention of possession is as follows: "The suit requested an equitable lien on $66,866–the $41,500 in the escrow account [established by McCutchen's attorney specifically in connection with the reimbursement lawsuit] and $25,366 more in McCutcheon's possession." *Id.* at 1543.

31

possession and control of the *defendant beneficiary*." *Id.* (emphasis added). In *Bombardier*, the plan sued one of its beneficiaries and the beneficiary's law firm—which held the proceeds from a third-party tort suit in trust on behalf of the beneficiary—to recover for medical expenses paid on the beneficiary's behalf. *Id.* at 350. First, the court concluded that the law firm was a proper defendant because "Congress did not see fit . . . to include a . . . limitation on the set of proper *defendants* to a § 502(a)(3) action." *Id.* at 354. Next, the court concluded that the suit was equitable in nature because all three elements of the test were met. *Id.* at 356. The plan sought (1) identifiable funds (2) that belonged in good conscience to the plan under the reimbursement provision. *Id.* The third element—that the beneficiary have control over and possession of the disputed funds—was met because the "Plan's participant . . . ha[d] ultimate control over, and thus *constructive* possession of, the disputed funds" held in trust by his attorney on his behalf. *Id.* Because the "Plan [did] not seek to impose personal liability on either [the beneficiary] or his counsel," the court concluded "that § 502(a)(3) authorize[d] the Plan's claim for relief." *Id.* at 358.

In *Bombardier*, we distinguished our prior opinion in *Bauhaus USA, Inc. v. Copeland*, 292 F.3d 439 (5th Cir. 2002), in which we held that funds deposited in a state court's registry in anticipation of an interpleader action were not in the defendant-beneficiary's actual or constructive possession or control. *Bombardier*, 354 F.3d at 356 (discussing *Bauhaus*, 292 F.3d at 445). Because the funds in *Bauhaus* were in the court's registry and thus outside of the defendant's control, we concluded that the plan was trying to impose personal liability on the defendant-beneficiary, and the action could not proceed under § 502(a)(3). *Bauhaus*, 292 F.3d at 444-45. The *Bombardier* court also distinguished *Knudson*, noting in that case, "the funds had been placed in a

Special Needs Trust, as mandated by California law, to provide for the beneficiary's care, and the trustee was totally independent of the plan beneficiary." *Bombardier*, 354 F.3d at 356. Under *Bauhaus* and *Bombardier*, the panel correctly ruled that Larry Griffin did not have possession or "constructive possession" (and certainly not "control") of the funds in the Trust.

In sum, *Bombardier* and *Sereboff* do not support a finding that the Trust and Trustee can be held liable.[6] In those cases, the money was actually in the defendant-beneficiary's possession or control. Unlike here, the defendant-beneficiary in *Bombardier* had constructive possession and actual control of the settlement funds—a portion of which were placed in his lawyer's IOLTA account. *See* 354 F.3d at 350-51. Similarly, in *Sereboff*, the funds were held in an investment account that was actually controlled by the plan's beneficiary. 547 U.S. at 360. Thus, the facts of *Sereboff* and *Bombardier* are distinguishable from this case.

B. Failure to Join Hartford

An additional basis for concluding that the Appellants' claim fails here rests on their failure to join Hartford CEBSCO as a defendant. Under Supreme Court and Fifth Circuit precedent, the Appellants must demonstrate that both the basis and nature of their claim are equitable. *See Knudson*, 534 U.S. at 213 ("[W]hether [a remedy] is legal or equitable depends on the basis for [the plaintiff's] claim *and* the nature of the underlying remedies sought." (alteration in original) (emphasis added) (citation and internal quotation marks omitted)); *see also Sereboff*, 547 U.S. at 363. Although the Appellants' *basis* for relief—a constructive trust—is equitable, the *nature* of the Appellants' relief does not lie

---

[6] The majority opinion implicitly overrules the third prong of the *Bombardier* test. I submit that this overruling is error as discussed more fully below.

No. 11-40446

in equity because Hartford CEBSCO—the entity that possesses and controls the annuity containing the funds at issue—was not joined as a defendant.  Indeed, the Appellants' remedy is legal in nature because it effectively seeks to impose personal liability on Larry Griffin, the Trust, and the Trustee "in an amount no less than $50,076.19," regardless of the fact that none of these defendants has actual or constructive possession of the settlement funds. *See Knudson*, 534 U.S. at 214 ("The kind of restitution [sought], therefore, is not equitable—the imposition of a constructive trust or equitable lien on *particular* property—but legal—the imposition of personal liability for the benefits . . . conferred upon [the beneficiaries]." (emphasis added)); *see also Restatement (Third) of Restitution and Unjust Enrichment* § 55 cmt. h (2011) ("If the claimant cannot show an equitable entitlement to specific property in the hands of the defendant, the underlying basis of the remedy is lost.").  Therefore, the failure to join Hartford CEBSCO as a defendant precludes the Appellants from establishing the equitable nature of the relief they seek because they cannot demonstrate that any of the named defendants has possession of the settlement funds.

C. Summary

In the end, *Bombadier*'s emphasis on a defendant-beneficiary's actual or constructive possession should continue to be the law of this circuit because it appropriately balances the availability of equitable relief for ERISA plans with the important protections afforded to special needs trusts by Congress and the states as a means of providing for disabled individuals.  Indeed, continuing to follow our approach in *Bombadier* would align us with many of our sister circuits, which emphasize the importance of the defendant-beneficiary or defendant-conservator *currently* having either actual or constructive possession of the funds at issue.  *See, e.g.*, *Hall v. Liberty Life Assur. Co. of Boston*, 595 F.3d

34

270, 275 (6th Cir. 2010) (concluding that a plan seeking reimbursement could not impose an equitable lien on a beneficiary's future social security disability benefits because the plan had no claim to the benefits until they were in the beneficiary's possession); *Longaberger*, 586 F.3d at 469 (funds at issue were held by beneficiary's attorney in an IOLTA account thereby giving defendant-beneficiary constructive possession and defendant-attorney actual possession of funds); *Admin. Comm. for the Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Horton*, 513 F.3d 1223, 1228-29 (11th Cir. 2008) (disputed funds held in trust account over which defendant-conservator had possession and control); *Dillard's Inc. v. Liberty Life Ins.*, 456 F.3d 894, 901 (8th Cir. 2006) (defendant-beneficiary had received disputed funds from Social Security Administration); *Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Wells*, 213 F.3d 398, 401 (7th Cir. 2000) (defendant had constructive possession of funds held by attorney); *see also Cusson v. Liberty Life Assurance Co. of Boston*, 592 F.3d 215, 223 (5th Cir. 2010) (defendant-beneficiary had possession of the social security disability benefit funds sought by the plan).

## IV.    Special Needs Trusts

Finally, the majority opinion fails to account for a significant aspect of this case.  The need to give effect to § 502(a)(3)'s provision of equitable relief for ERISA plans must be balanced with the need to give effect to the protections afforded to special needs trusts by Congress and the states.  This is not a case in which the plan seeks to recover from only the beneficiary, *see Knudson*, 534 U.S. at 214, a lawyer's IOLTA account, *see Longaberger*, 586 F.3d at 469, a state court's registry, *see Bauhaus*, 292 F.3d at 441, a court-sanctioned investment account, *see Sereboff*, 547 U.S. at 360, or any other usual source.  Instead, the Appellants seek to recover, *inter alia*, against a special category of

35

trusts—special needs trusts. Permitting such recovery requires disregarding the special nature of these trusts, which the majority opinion does not consider apart from a short discussion at the end of the opinion. Giving special needs trusts appropriate consideration, however, leads to the inescapable conclusion that we must respect the protections afforded to them by Congress and the states.

A special needs trust is created for a disabled individual to allow a trustee to manage assets for the benefit of a disabled person. *See* 1 STUART D. ZIMRING, REBECCA C. MORGAN, BRADLEY J. FRIGON & CRAIG C. REAVES, FUNDAMENTALS OF SPECIAL NEEDS TRUSTS, § 1.04 (Matthew Bender ed., 2012). It has very specific requirements concerning its establishment, it is not available to everyone (for example, the beneficiary must be "disabled" under the definition provided in the Social Security Act), and disbursements from the trust may only be used for limited and specific purposes. *See, e.g.*, 42 U.S.C. § 1396p(d)(4)(A) (discussing requirements of a special needs trust to ensure the assets it contains are excluded when determining a beneficiary's Medicaid eligibility); TEX. PROP. CODE ANN. § 142.005(b)(2) (explaining that the trust's assets can only be used for expenses "reasonably necessary for the health, education, support, or maintenance of the beneficiary"). Also, the trust may not be established by the individual with the disability, but instead must be "established for the benefit of such individual by a parent, grandparent, legal guardian of the individual, or a court . . . ." *See* 42 U.S.C. § 1396p(d)(4)(A). Further, it is critical that the beneficiary does not directly receive the money in hand—it must be paid to the trust for the use and benefit of the beneficiary. *See* ZIMRING ET AL., *supra*, § 1.05; *see also* TEX. PROP. CODE ANN. § 142.005(a) (providing that a court may direct the proceeds of a beneficiary's judgment to be paid directly to a special needs trust). These requirements for establishing and maintaining special needs

No. 11-40446

trusts ensure that they do not operate as a conduit through which to pass money to the beneficiary or to harbor tainted assets.

The primary purpose of special needs trusts is to allow beneficiaries to maintain eligibility for public benefits—such as Medicaid—while supplementing those benefits so that the beneficiary enjoys a better quality of life. *See* ZIMRING ET AL., *supra*, § 1.05. Indeed, Congress and the states sanction the use of special needs trusts as a lawful means of protecting assets to achieve this purpose. *See* 42 U.S.C. § 1396p(d)(4)(A); TEX. PROP. CODE ANN. § 142.005(g) (providing that the court may structure the terms of a trust as "necessary or appropriate to allow the beneficiary to be eligible to receive public benefits or assistance under a state or federal program"). This result can be achieved because a special needs trust is "irrevocable and . . . there are limits on the source and use of funds, otherwise the trust principal would be considered available to the beneficiary, and the beneficiary would be disqualified from public benefits." *See* ZIMRING ET AL., *supra*, § 1.05.

Here, regardless of Larry Griffin's motive, a special needs trust has been created. The Appellants do not dispute that Larry Griffin was adjudicated by the Texas courts to be disabled, and they do not dispute that a special needs trust was established pursuant to section 142.005 of the Texas Property Code and 42 U.S.C. § 1396p(d)(4)(A).[7] The Appellants also never contend that the Trust is merely a means to pass the money from the annuity directly into Larry Griffin's hands. Furthermore, the Trust agreement provides that the Trust was established at the specific direction of the Court, and therefore *the assets*

---

[7] Before the panel, the Appellants argued that Chapter 142 of the Texas Property Code was preempted by ERISA, but they mention this argument only in passing before the en banc court. In any event, special needs trusts are expressly condoned by federal law.

No. 11-40446

*directed to this trust by the Court should not be deemed to have been or to be available to the Beneficiary.* This trust is established under the jurisdiction, at the direction, and with the specific approval of the Court *without transfer of ownership of the settlement proceeds to the Beneficiary or his legal guardians.* (emphasis added). Accordingly, every indication is that the money was never in Larry Griffin's possession but was passed directly to the Trust and is now used to care for Larry Griffin, who is disabled. Larry Griffin cannot decide when and how the money will be spent on his behalf because the Trustee, not Larry Griffin, has control of the money and may only use it for limited purposes. The fact that the beneficiary of a special needs trust explicitly does *not* have the right to either possession or control is crucial because it preserves his right to public benefits. *See* 42 U.S.C. § 1396p(d) (providing that assets contained in a special needs trust shall be excluded when determining eligibility for public benefits); *see also* ZIMRING ET AL., *supra*, § 1.05.

If Larry Griffin had unfettered access to the money from the annuity, the Appellants could recover the money from Larry Griffin or the Trust as Larry Griffin would have possession and the right to control the money. However, under the law of special needs trusts, the Trust is structured in such a way that the funds are used for Larry Griffin's benefit, but Larry Griffin is *not* in possession of or control over the funds. Accordingly, in my view, this lack of possession renders the Appellants' request for equitable relief under § 502(a)(3) inappropriate.

Furthermore, the two decisions from our sister circuits supporting the majority opinion's holding do not give adequate consideration to the unique nature of special needs trusts. For example, the Eleventh Circuit in *Horton* provided that a plan could seek equitable relief against a beneficiary in her

38

capacity as the trustee of her son's special needs trust.[8]  513 F.3d at 1228-29 (noting that the plan has identified "particular property that is in the hands of [the beneficiary] in her capacity as . . . conservator" of her son's special needs trust).  Similar to the majority opinion—which focuses on possession and tracing requirements—the court in *Horton* did not address the unique nature of special needs trusts, but instead focused on "whether a benefit plan could use § 502(a)(3) to recover a specifically identified fund in the possession of a third party, such as a trustee or conservator, by suing the third party directly."  *Id.* at 1227.  The general nature of *Horton*'s approach is illustrated by the court's statement that a suit in equity may be maintained against a third party when "'property is held by one person upon a constructive trust for another, and the former transfers the property to a third person who is not a bona fide purchaser[.]'"  *Id.* at 1228 (quoting RESTATEMENT OF RESTITUTION §160 cmt. g (1937)).  While this may be the standard in other contexts, I note that it must be applied in a manner that accounts for the protections afforded to special needs trusts.[9]

Moreover, the Eighth Circuit's opinion in *Administrative Committee of Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Shank*, 500 F.3d 834, 836 (8th Cir. 2007), provides minimal guidance in this matter.  Indeed, *Shank* addresses facts similar to those presented by this appeal and determines that

---

[8]  The beneficiary's son was a "covered person" under the ERISA plan and the plan sought reimbursement for medical expenses paid on behalf of the beneficiary's son after he recovered money from the tortfeasor and placed it in a special needs trust.  *Horton*, 513 F.3d at 1224, 1229.

[9]  *Horton* is also distinguishable because the beneficiary had possession of the funds at issue in her capacity as the trustee of the special needs trust.  513 F.3d at 1224 n.1 (noting that the beneficiary, "in her capacity as conservator, acts as the equivalent of a trustee who possesses the funds on [her son's] behalf").  Accordingly, unlike here where a non-beneficiary serves as the Trustee, the plan in *Horton* could establish defendant-beneficiary possession.

equitable relief under § 502(a)(3) could lie against a beneficiary's husband in his capacity as trustee of a special needs trust. *See id.* at 836-37. Nonetheless, the court's mention of the special needs nature of the trust at issue was completely devoid of any analysis of the special considerations attendant to such trusts and Congress's express approval of them. The court provided only a brief discussion of whether the relief sought was equitable, *see id.* at 836, and instead focused on whether "appropriate" relief under ERISA constituted a full or *pro rata* reimbursement of funds paid by the plan, *see id.* at 836-40. Accordingly, although this case facially supports the majority opinion's conclusion that recovery can lie against the Trust and Trustee, the lack of consideration it gives to special needs trusts undercuts its value in our analysis.

As explained above, this way of structuring a trust is sanctioned by Congress and the State of Texas as a way to provide a disabled individual with additional benefits while also permitting the individual to retain access to public benefits such as Medicaid. *See, e.g.*, 42 U.S.C. § 1396p(d) (providing that the calculation of an individual's eligibility for public benefits should not include assets held in a special needs trust); TEX. PROP. CODE ANN. § 142.005(g). It is not a sham, and the Appellants have not contended that it is or that it fails the test for a special needs trust. In sum, the Trust represents a congressionally sanctioned means of providing Larry Griffin with additional benefits without interfering with his entitlement to public benefits.[10] The majority opinion's

---

[10]  The value of the Trust demonstrates it has a purpose well beyond any reimbursement issue. The annuity holding the funds against which the Appellants seek equitable relief has a value of approximately $148,000, which is more than the approximately $50,000 sought in reimbursement. Putting the reimbursement issue aside, the Trust—through the annuity—holds almost $100,000 in assets that lie completely outside of Larry Griffin's possession and control and that will be used solely by the Trustee for Larry's benefit. This demonstrates that the Trust has a broader purpose than merely protecting the

No. 11-40446

approach ignores this key distinction and raises the specter that all special needs trusts will be available for "equitable" relief to various creditors of beneficiaries of such trusts.  Such a drastic approach should come from Congress, not the courts.  From the majority opinion's contrary conclusion, I respectfully dissent.

---

funds from the Appellants' attempts to seek equitable relief.